## · Commonwealth *v.* McLaughlin, Appellant.

*Criminal law—Murder—Murder of the second degree—Involuntary manslaughter—Killing by automobile—Malice—Words and phrases—Intoxication—Stopping to help negatives malice.*

1. Murder, as defined by the common law, consists of the unlawful killing of a human being with malice aforethought, express or implied.

2. Malice is a legal term which comprehends not only a particular ill will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, or a mind regardless of social duty.

3. Murder of the second degree includes every element which enters into murder of the first degree except the intention to kill; premeditation is essential as in other cases of murder.

4. Malice is a necessary element of the crime of murder of the second degree; it may be inferred from the wanton conduct of one who kills another, from wicked disregard of the consequences of his acts.

5. There must be a consciousness of peril or probable peril to human life imputed to the operator of an automobile before he can be held for murder.

6. Unless a driver intends to strike people in the road or is recklessly disregardful of their safety he cannot legally be convicted of murder.

7. The mere fact that the driver is intoxicated, without more being shown, will not sustain his conviction for murder of the second degree.

8. If a driver stops within two hundred feet of the place where he has struck a man, and endeavors to help him as best he can, such conduct negatives the idea of wickedness of disposition or hardness of heart. ·

9. A driver who kills another without malice or intention, may be indicted for involuntary manslaughter.

10. If such person is tried for murder, and an indictment for involuntary manslaughter is nol prossed by the district attorney, the Commonwealth, after the prosecution for murder has failed, may revive the proceedings on the original bill, or institute another prosecution for involuntary manslaughter.

Mr. Justice Simpson filed a dissenting opinion, in which Mr. Chief Justice Moschzisker concurred.

Argued April 16, 1928.  Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 197, Jan. T., 1928, by defendant, from, judgment of O. & T. Luzerne Co., Sept. T., 1927, No. 80, on verdict of guilty of murder of the second degree, in case of Commonwealth v. Cletus McLaughlin.  Reversed.

Indictment for murder.  Before JONES, J.

The opinion of the Supreme Court states the facts.

Verdict of murder of the second degree on which judgment of sentence was passed.  Defendant appealed.

*Errors assigned* were various rulings, quoting record.

*Abram Salsburg,* with him *E. F. McGovern,* for appellant.—To warrant a conviction of murder of the second degree in this case, the evidence should show that defendant, conscious of peril or probable peril to human life, wantonly, recklessly and in disregard of consequences, hurled his car against deceased: Com. v. Mayberry, 290 Pa. 195.

A mistaken judgment is not sufficient to establish criminal negligence, let alone ordinary negligence: Floyd v. R. R., 162 Pa. 29; Post v. Richardson, 273 Pa. 56; Leslie v. Cantanzaro, 272 Pa. 419.

*Thomas Butkiewicz,* Assistant District Attorney, with him *Thomas M. Lewis,* District Attorney, for Commonwealth.—The conviction of murder in the second degree was warranted and proper: Com. v. Mayberry, 290 Pa. 195.

OPINION BY MR. JUSTICE SCHAFFER, May 7, 1928:

Defendant, a young man, twenty years of age at the time of the occurrence we are to deal with, appeals from his conviction and sentence for murder of the second

degree, contending that the evidence produced against him did not establish this crime.

With two companions he was driving his father's automobile about half past ten o'clock at night along Northampton Street in Wilkes-Barre Township in the County of Luzerne. His progress. was down grade and was at the rate of twenty or twenty-five miles an hour. The highway was well lighted. Frank Ravitt and his wife were walking in the cartway of the street ahead of and in the same direction as the automobile, their presence within the street limits and not on the sidewalk being due to the pavement's bad condition. They were at the right-hand side of the center of the cartway, the wife in or near the street car track, the husband on her right. He was pushing a baby coach in which was their infant child. Defendant so drove his automobile that it struck the group in the cartway, killing the husband and the baby and seriously injuring the wife. The impact was with such force as to knock the bodies of the man and woman a distance of from twenty-five to fifty feet and the child out of the coach and over onto the pavement. There was a dispute in the testimony as to whether the lights on the automobile were lit and as to whether defendant sounded his horn as he approached the stricken people; whether he was intoxicated was likewise a controverted fact.

One of the Commonwealth's most material witnesses, Lawrence Brosinski, the only person except defendant and the two others who were in the car with him who actually saw the tragedy, testified that if defendant "had swung his machine toward the side instead of the middle of the road he would never have struck these people." Defendant's story in amplification of this was that he blew his horn and noticed the two persons walking in the center of the road, that he had ample room to pass them to the right, that when he blew his horn "they seemed to be going to the left, and all of a sudden they veered to the right, and as they did I applied my brakes,

but it was too late. I had already struck them—he [the husband] seemed to dart to the right quicker than I could get the machine stopped." In this recital he was corroborated by the two young men who were in the car with him. The automobile ran some distance, perhaps 200 feet beyond the point of the collision. Defendant and his companions ascribed this to the circumstance that in his excitement he took his foot off the brake. It appeared in the prosecution's case by the testimony of more than one witness that the brakes were applied, as they heard their screeching before the crash. Immediately after the automobile stopped, defendant ran back, picked up the woman and aided in placing her and the husband in automobiles, one of them in his own, to convey them to the hospital. Upon this evidence the jury found defendant guilty of murder of the second degree and the question to be decided is whether that finding can be sustained.

Murder, as defined by the common law, consists of the unlawful killing of a human being with malice aforethought, express or implied: Com. v. Harman, 4 Pa. 269, 271. Malice is a legal term which comprehends not only a particular ill will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, or a mind regardless of social duty: Com. v. Drum, 58 Pa. 9, 15. In this State the legislature has divided the common law crime of murder into two degrees. The statute defines murder of the first degree, and then provides that "all other kinds of murder shall be deemed murder of the second degree": Act of March 31, 1860, P. L. 332, section 74. Thus murder of the second degree is common law murder, but the killing is not accompanied by the distinguishing features of murder of the first degree. The crime includes every element which enters into murder of the first degree except the intention to kill: Com. v. Divomte, 262 Pa. 504, 507; see also 29 C. J. 1118. "Premeditation is essential as in other cases of murder":

Wharton's Criminal Law, 11th ed., vol. 1, p. 702. It is apparent, therefore, that malice is a necessary element of the crime of murder of the second degree, and it was with this in view that we recently said "it is rarely that the facts in a motor vehicle accident will sustain a charge of murder. The element of malice is usually missing. There must be a consciousness of peril or probable peril to human life imputed to the operator of a car before he can be held for murder": Com. v. Mayberry, 290 Pa. 195, 199. In the present case one of the things which seems to have been given much weight by the court below in its opinion sustaining the conviction was defendant's failure to see the people on the road in time to avoid striking them. This negatives any specific intent to injure them. Unless he intended to strike them, which we think it manifest from the evidence he did not, or was recklessly disregardful of their safety, which the testimony does not establish, he could not legally be convicted of murder. Malice may be inferred from the wanton and reckless conduct of one who kills another from wicked disregard of the consequences of his acts (Com. v. Mayberry, supra), but here defendant's actions after the collision negative the idea of wickedness of disposition or hardness of heart. He endeavored as best he knew how to care for those he had injured. Moreover, it cannot be implied from the circumstances of the accident that defendant was driving his car with wanton disregard of the rights and safety of others upon the highway. The mere fact that he was intoxicated (conceding this to have been proved), without more being shown, would not sustain the conviction. Consequently, we are of the opinion that it could not properly be found, upon the evidence presented, that defendant either purposely, intentionally, recklessly, or wantonly drove his car upon the deceased, and therefore that he should not have been convicted of murder.

If defendant was guilty of any crime, it was that of involuntary manslaughter, which consists in "the kill-

ing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty": Com. v. Mayberry and authorities there cited.

Defendant may still be tried on the indictment charging involuntary manslaughter, notwithstanding that the district attorney entered a nolle prosequi on the indictment. A nolle prosequi is a voluntary withdrawal by the prosecuting attorney of present proceedings on a particular bill. At common law it might at any time be retracted, and was not a bar to a subsequent prosecution on another indictment, but it might be so far cancelled as to permit a revival of the proceedings on the original bill: Words & Phrases, 1st Series, vol. 5, p. 4814. Whatever the rule may be elsewhere, such action in this jurisdiction is not a bar to a subsequent indictment for the same offense, or may be so far cancelled as to permit a revival of proceedings on the original bill: Hester v. Com., 85 Pa. 139; Sadler on Criminal and Penal Procedure in Pennsylvania, p. 351, section 376; Agnew v. Commissioners of Cumberland County, 12 S. & R. 94, 96.

The first assignment of error is sustained and the judgment of sentence is reversed without prejudice to the Commonwealth's right to proceed against defendant for the crime of involuntary manslaughter.

DISSENTING OPINION BY MR. JUSTICE SIMPSON:

The majority opinion states that defendant, while driving his father's automobile, struck three persons who were travelling in front of him and going in the same direction he was, killing two of them and greatly injuring the third; that the car then ran some 200 feet further, after which he returned and helped convey two of the three to the hospital, and from this concludes that "defendant's actions after the collision negative the idea

of wickedness of disposition or hardness of heart." With all due respect, the jury and trial judge who saw the witnesses when they testified, and the colleagues of the latter who obtained from him a clear picture of their conduct on the witness stand, were far better able to draw the true inferences, than the judges of this court who must rely upon what appears in cold type only. At least as possible an inference from the facts above stated is that the defendant, while running the 200 feet beyond the place of the accident, concluded he would be better off if he came back than if he fled further, and hence the fact of his return did not negative the conclusion, which the jury drew from all the evidence, that defendant's "wanton and reckless conduct......[*at the time of the accident* shows his] wicked disregard of the consequences of his acts," and this, if found to be true, as it was, the majority agree would be sufficient to sustain the verdict and sentence.   For this reason I dissent.

The chief justice concurred in this dissent.