Circulated 12/21/2023 02:44 PM

J-A16020-23
J-A16021-23

2023 PA Super 244

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STUART HARRISON | : | |
| | : | |
| Appellant | : | No. 519 MDA 2022 |

Appeal from the Order Entered November 1, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0007632-2018


| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STUART HARRISON | : | No. 520 MDA 2022 |

Appeal from the Order Entered November 1, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0007632-2018


BEFORE:  PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

OPINION BY BENDER, P.J.E.:

Former police officer, Stuart Harrison, faces one count of simple assault despite the Commonwealth's two attempts to terminate that prosecution.  In its second attempt, which is the subject of this interlocutory appeal by permission, the Commonwealth claimed that it could not proceed due to the death of a witness.  The trial court disagreed with the Commonwealth's

evidentiary analysis. Harrison and the Commonwealth[1] ask this Court to conclude that the trial court improperly credited its own view of the evidentiary question instead of deferring to the Commonwealth's judgment. The parties submit that this Court should look to *In re Ajaj*, 288 A.3d 94 (Pa. 2023), which addresses judicial review of prosecutors' declining to file private criminal complaints, for the relevant standard of review. Under that standard, the Commonwealth's petition must be granted unless its request was due to "bad faith, occurred due to fraud, or was unconstitutional." *Id.* at 97.

We decline to adopt this standard, as the decision to file charges is distinguishable from a decision to withdraw charges. In the former case, which *In re Ajaj* addresses, the prosecutor has decided that criminal charges were not warranted. The judicial branch must tread lightly when interfering with that judgment call. In the latter scenario, the prosecutor decided at one time that charges were warranted. That is a conscious choice to implicate the judicial branch. For the reasons set forth below, we conclude that a motion to withdraw a charge due to purported evidentiary insufficiency is subject to *de novo* review, as it presents a pure question of law. We agree with the trial court's assessment of the evidence and therefore affirm.

## I.

On May 30, 2018, employees of the Santander Bank requested assistance from the Southwestern Regional Police Department. Harrison, an

---

[1] The victim is not a party to this appeal, and it does not appear he ever sought to participate. Hence, the victim's interests are not represented.

officer employed by that department, responded and met the bank manager, who pointed out Ryan Smith. The manager informed Harrison that Smith was attempting to withdraw money from his account but did not have any identification. Smith refused to comply with Harrison's command to leave the bank. Harrison eventually informed Smith that he was under arrest and twice deployed his TASER, which did not make sufficient contact with Smith's skin to disable him.

A second officer, Michael Matthews, arrived to assist after the second TASER deployment. Eventually, the two officers were able to cuff Smith's hands behind his back and escorted him from the building. Smith refused to enter the patrol vehicle, and the two officers struggled to force him into the backseat. Ultimately, Harrison "decided that he was going to drive stun … Smith in the thigh with his TASER to see if that would get him to buckle his leg so that they could get him in the back seat of the car." Affidavit of Probable Cause, 11/30/18, at 3 (summarizing interview with Harrison). Smith pulled a trigger and immediately realized he had mistakenly drawn his firearm. The bullet entered Smith's leg, requiring a 17-day hospital stay.

Smith's mother, Christine Smith, witnessed the shooting. She told investigators that Smith said he was going to get money from the bank. She explained that Smith had a mental illness, had been treated at the hospital for psychiatric reasons and had just been released the day before, and seemed delusional. She followed her son and told the arresting officers during the struggle that Smith was experiencing a mental break.

The Pennsylvania State Police investigated and interviewed, among others, Amanda Hendrickson-Cozio, who worked at the bank as a cleaner, and Harry Harrington, a customer at the bank. Hendrickson-Cozio saw the shooting but did not witness the events inside the bank. Harrington witnessed the entire encounter. The investigators also obtained video footage recorded on a phone, which showed the initial dispute and TASER deployments. Harrison was charged with one count of negligent simple assault. 18 Pa.C.S. § 2701(a)(2) ("[A] person is guilty of assault if he … negligently causes bodily injury to another with a deadly weapon[.]").

Hendrickson-Cozio, Christine Smith, and Trooper Daniel Weldon testified at the preliminary hearing on December 21, 2018. Harrison was held on the sole charge.

### The first attempt to terminate prosecution

The Commonwealth first tried to terminate this prosecution on May 19, 2020. While that ruling is not before us, it is referenced within the trial court's opinion on this matter and provides context.

The Commonwealth attached a memorandum of law to its petition, explaining that the *nolle pros* was "in the interests of justice." Memorandum in Support of *Nolle Prosequi*, 5/19/20, at 1 (unnumbered). The memorandum was almost entirely based on the Commonwealth's analysis of the sentencing factors set forth at 42 Pa.C.S. § 9721(b) (instructing a court to consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs

- 4 -

of the defendant"). The Commonwealth cited Harrison's 16-year career and argued that Harrison was not likely to recidivate. Similarly, the Commonwealth determined that Harrison's rehabilitative needs were non-existent as the incident was a mistake. The Commonwealth also cited Harrison's expressions of remorse and his conduct after-the-fact, which included addressing two cadet classes about the shooting. The Commonwealth believed that these actions "establish that he highly appreciates the seriousness of this offense and his great degree of remorse for injuring Mr. Smith." *Id.* at 4.

Turning to the victim's needs, the Commonwealth did not mention Smith, instead citing its discussions with his mother. The memorandum stated that Mrs. Smith had "stressed two matters as critical outcomes for this case," which were that Harrison no longer carry a firearm while working and that the shooting serve as an educational example for dealing with mental health issues. The Commonwealth noted that Harrison is no longer working as a police officer and cited the trainings conducted by Harrison. "The Commonwealth believes that these primary outcomes sought by Mrs. Smith are accomplished." *Id.* at 5. The Commonwealth conceded that Mrs. Smith objected to withdrawing the charge but asserted that any further punishment "would be … punishment for punishment's sake." *Id.* at 5-6. The Commonwealth stressed that "Mr. Harrison has, in fact, undergone a lasting punishment" because he had been arrested and suffered "collateral

consequences and public stigma. That lasts regardless of whether a conviction occurred." *Id.* at 6.

The Honorable Maria Musti Cook denied the petition following a hearing on June 15, 2020. The court stated at the outset its concern that the Commonwealth's filings indicated that Smith had not been given notice of the hearing. District Attorney David Sunday explained that, as set forth in the memorandum, the Commonwealth had discussed its plan with Smith's mother. Attorney Sunday added that he spoke with Smith's "personal injury lawyer and … I certainly thought that everything was being communicated to him." N.T., 6/15/20, at 3-4.

The trial court then asked Smith, who was present, what communications he had received. Smith stated, "None. The [District Attorney] has never reached out to me once." *Id.* at 5. Smith stated that he was present only because "Ashley contacted me and told me what was going on…." *Id.* at 6.[2] The trial court then asked Mrs. Smith about the Commonwealth's discussions with her. She agreed that the District Attorney's Office had discussed the matter with her and confirmed that she disapproved of the decision to drop the charge. Attorney Sunday explained at length why he believed a withdrawal was appropriate and argued that most prosecutors would not have filed charges at all.

---

[2] It is not clear who Ashley is, and no last name was given.

The trial court characterized the Commonwealth's memorandum as focusing on "sentencing considerations, and sentencing considerations come into play after there's a plea or a verdict." *Id.* at 16. The court opined that a *nolle pros* is appropriate when "the evidence is insufficient to sustain a conviction," and the Commonwealth "[is] not saying that." *Id.* The Commonwealth replied that sentencing law is "the closest that we can find." *Id.* at 17. The trial court denied the petition as well as the Commonwealth's request that the court amend the order to state it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter." 42 Pa.C.S. § 702(b). *See* Pa.R.A.P. 311(a)(1) (authorizing appeal certified under that statute). The Commonwealth then sought permission to appeal, which we denied on November 9, 2020.

<u>Second attempt to terminate prosecution</u>

The next event on the criminal docket sheet after the Commonwealth's petition to appeal was denied is dated September 16, 2021, when the Commonwealth filed its second motion for *nolle prosequi*, which is the subject of this appeal. On November 1, 2021, the parties appeared for a hearing. The Commonwealth claimed that it could no longer proceed as Harrington had died on March 23, 2019. The Commonwealth stated that, without his testimony, "the Commonwealth does not believe it can meet its burden beyond a reasonable doubt. When we cannot meet our burden, it is our ethical

obligation to the [c]ourt to ask that the charges be dismissed." N.T., 11/1/21, at 2. The court responded, "I have to say, I'm trying to say this politely, I found [the petition] quite lame for two reasons." *Id.* at 3. The first was that Harrington had died on March 23, 2019, which predated the Commonwealth's first attempt to withdraw all charges. The second was the trial court's conclusion that Harrington's testimony was not needed to secure a conviction. The Commonwealth replied that "Harrington was the sole independent witness at that time" who saw what occurred both inside and outside the bank. *Id.* at 4. The trial court did not buy this argument, averring that this case is no different "from any domestic violence case, any rape case, any case where all we have is a victim and a perpetrator and no other witnesses." *Id.* The Commonwealth responded that Harrington's testimony was relevant to "what we anticipate [the] defense to present at the time of trial. Here, in what we anticipate the defense to be, Mr. Harrington is critically necessary to refute that defense." *Id.* The Commonwealth also stated that it was unaware of Harrington's death when it first sought to terminate the case because it had yet to start preparing for trial due to its plea discussions. The trial court rejected the Commonwealth's arguments and entered an order denying the Commonwealth's second motion for *nolle prosequi*.

### Trial court opinion

The Commonwealth again requested that the trial court certify the order for appeal pursuant to 42 Pa.C.S. § 702(b), which the trial court denied. Both parties filed a petition for permission to appeal, which this Court granted. We

then consolidated the appeals *sua sponte* and the trial court ordered the parties to file concise statements pursuant to Pa.R.A.P. 1925(b). The Commonwealth raised the following claims, which are virtually identical to the issues presented on appeal:

> I. Did trial court err in denying the Commonwealth's Motion for *Nolle Prosequi* where [the court] found the rationale for the Commonwealth's motion to be 'lame' and based its decision ... on generalizations concerning evidentiary sufficiency and not on an assessment of the individualized evidentiary sufficiency of this case?
>
> II. Did the trial court err in denying Commonwealth's Motion for *Nolle Prosequi*, despite the Commonwealth's repeated averments that it could not ethically proceed due to a lack of sufficient evidence to proceed to trial pursuant to Rule 3.8 of the Rules of Professional Conduct?
>
> III. Did trial court violate the constitutional requirements governing Separation of Powers by denying the Commonwealth's Motion for *Nolle Prosequi* based upon a review of all evidence, including that of the defense in light of the passing of a material Commonwealth witness, and determination that the evidence was insufficient to proceed to trial, and ordering the Commonwealth to proceed to trial despite this independent evaluation of the executive branch and that doing so requires the Commonwealth to violate the ethical mandates of Pennsylvania Rule of Professional Conduct 3.8?

Concise Statement, 5/12/22, at 1-2 (unnumbered).

In response to the Commonwealth's concise statement, the trial court elaborated on its assessment of the evidence remaining to the Commonwealth in its Rule 1925(a) opinion. First, the trial court pointed out that the Commonwealth's description of Harrington as the only "independent" witness is incorrect, as Hendrickson-Cozio said she witnessed the shooting. Thus, the trial court stated that "independent evidence exists from a witness unrelated

- 9 -

to Smith or [Appellant] or the police department." Trial Court Opinion (TCO), 6/13/22, at 8 (unnumbered). Addressing the fact that Hendrickson-Cozio did not witness the dispute inside of the bank, the court referenced the video evidence showing what happened inside the bank, and noted that "there are several witnesses who can provide testimony regarding observations of what occurred outside of the bank from the time Smith exited the bank until he was shot by [Harrison]." *Id.* at 8-9.

The trial court also determined, for largely the same reasons, that prosecuting Harrison would not violate Rule 3.8 of the Rules of Professional Conduct. The trial court noted that the Commonwealth did not cite any particular provision of that Rule, but did not deem the issue waived for that failure, as it presumed that the Commonwealth referenced Rule 3.8(a), which states that "[t]he prosecutor in a criminal case shall … refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause[.]" PA ST RPC Rule 3.8. The court quickly dispensed with the argument, reiterating that the evidence was sufficient to convict, and that the Commonwealth "regularly proceeds to trial with much less evidence and often with nothing more than a 'he said-she said' scenario…." TCO at 10.

Finally, the trial court found that its order did not violate separation of powers, as Pennsylvania Rule of Criminal Procedure 585 requires the trial court to consent to the Commonwealth's petition. *See* Pa.R.Crim.P. 585(A) ("Upon motion of the attorney for the Commonwealth, the court may, in open

court, order a *nolle prosequi* of one or more charges notwithstanding the objection of any person.").

## II.

Parties' Arguments

The parties are largely aligned in their presentations, as Appellant adopts wholesale the Commonwealth's arguments as to the second and third issues raised on appeal.

Regarding the first issue, the Commonwealth first contends that the trial court improperly conducted its own assessment of the strength of the evidence when reviewing the petition to *nolle prosequi* the charge. The Commonwealth faults the trial court for citing "generalized" assessments, such as the ability to prove a domestic violence assault case through the testimony of one witness, instead of examining the specific details of this case.

Relatedly, the Commonwealth expresses the view that its own review of the evidence should be credited. Harrington was the only witness to see what happened both inside and outside the bank, was the only witness "not affiliated with either the victim and his family or the police," and the only "independent witness whose testimony would establish that [Harrison] acted with criminal negligence." Commonwealth's Brief at 11. The Commonwealth disagrees that the other witnesses will suffice because "none of these witnesses offered the same type of testimony as Mr. Harrington," which "cannot be replicated by any other witness…." *Id.* at 16.

The Commonwealth agrees that it does not have unlimited discretion and accepts that judicial approval is required, but highlights case law linking a petition for *nolle prosequi* to judicial review of a prosecutor's refusal to file a private criminal complaint. Following ***In re Ajaj***, wherein our Supreme Court established a unitary standard of review for examining a prosecutor's reasons for not approving a private criminal complaint, the Commonwealth states that the trial court was required to grant its petition unless the request was due to bad faith, occurred due to fraud, or was unconstitutional. The Commonwealth argues that "[d]isapproving a private criminal complaint and seeking to terminate a prosecution though a *nolle prosequi* implicate[s] the same type of prosecutorial discretion. … [I]t stands to reason to employ the same standard in each circumstance." Commonwealth's Supplemental Brief at 13.[3] Harrison adopts this argument and adds that the trial court's ruling will force him "to litigate claims for months or years that have already been assessed by the Commonwealth as legally insufficient." Harrison's Brief at 10. This will cause "emotional burden[s] and severe financial hardship." ***Id.***

The Commonwealth's second claim on appeal is that it cannot ethically proceed because it lacks sufficient evidence to convict. Pennsylvania Rule of Professional Conduct 3.8 says that the Commonwealth cannot prosecute a

---

[3] We requested supplemental briefing as ***In re Ajaj*** was issued after the briefs were filed. The Commonwealth's initial brief argued that a trial court abuses its discretion if it does not accept a "reasonable" request for seeking a *nolle prosequi*. We interpret the Commonwealth's supplemental brief to argue the position that an abuse of discretion standard is too lenient in light of ***In re Ajaj***.

charge if it is not supported by probable cause. The Commonwealth argues that "[i]t is axiomatic that a prosecutor has an on-going duty to evaluate her cases to ensure that the cases being brought before juries are those for which guilt can be decided based upon sufficient evidence." Commonwealth's Brief at 21. The Commonwealth states that four separate prosecutors from the District Attorney's Office for York County reviewed the case and each concluded that, without Harrington's testimony, a conviction could not be obtained.

Finally, the Commonwealth claims that the trial court's ruling violated the separation of powers doctrine. It says that the judiciary, executive, and legislative branches are all independent and co-equal, and "the prosecutor has the power to decide whether to initiate formal criminal proceedings, to select those criminal charges which will be filed against the accused, to negotiate plea bargains, to withdraw charges where appropriate, and, ultimately, to prosecute or dismiss charges at trial." Commonwealth's Brief at 24 (quoting *Commonwealth v. Clancy*, 192 A.3d 44, 53 (Pa. 2018)). The Commonwealth does not claim that requiring judicial approval for a *nolle prosequi* in and of itself violates the separation of powers. However, the Commonwealth argues that, in the absence of a finding that the Commonwealth acted in bad faith, or that its decision was unconstitutional or discriminatory, the trial court must grant the petition. The trial court's ruling was not based on any of those possibilities. The trial court merely disagreed

with the Commonwealth, which is not a proper basis for denying its petition and impermissibly exercises a power reserved to the executive branch.

## III.

The parties' arguments proceed from the premise that the *nolle prosequi* inquiry should be analyzed under precedents examining a prosecutor's refusal to process a private criminal complaint filed by a citizen.[4]  We thus begin by briefly discussing the evolution of the common law *nolle prosequi* power in this Commonwealth and how that power has been analogized to the private complaint process.

Our sister court, the United States Court of Appeals for the Third Circuit, explains a petition for *nolle prosequi* as follows: "Under this doctrine, prosecutors have the power to decide whether to proceed with the prosecution of a charged defendant.  Absent a controlling statute or rule to the contrary, this power resides solely in the prosecutor's hands until the impanelment and swearing of a jury."  **In re Richards**, 213 F.3d 773, 782 (3d Cir. 2000). Pennsylvania likewise historically viewed the *nolle prosequi* power as not subject to judicial oversight.  "A *nolle prosequi* is a voluntary withdrawal by the prosecuting attorney of present proceedings on a particular bill.  At common law it might at any time be retracted and was not a bar to a subsequent prosecution on another indictment, but it might be so far canceled

---

[4] We address the parties' claims together because the second and third claims are variations of the first claim, which concerns the standard of review to be applied.  Our resolution of the standard of review argument suffices to dispense with the second and third points of error.

as to permit a revival of the proceedings on the original bill."

***Commonwealth v. McLaughlin***, 142 A. 213, 216 (Pa. 1928). Pennsylvania

law restricted this prosecutorial prerogative as early as 1850:

> Historically, at common law, a prosecutor had the authority to enter a *nolle prosequi* on his own motion. ***See Commonwealth ex rel. Thor v. Ashe***, … 11 A.2d 173 ([Pa. Super.] 1939). This unfettered power was modified by the Acts of May 3, 1850, P.L. 654, and the Criminal Procedure Act of 1860, which required that before a *nolle prosequi* could be entered, the assent of the proper court must be obtained. ***Id.***

***Commonwealth v. Stivala***, 645 A.2d 257, 261 (Pa. Super. 1994).

The power to request a *nolle prosequi* is currently governed by rule and

requires judicial consent. "Upon motion of the attorney for the

Commonwealth, the court may, in open court, order a *nolle prosequi* of one

or more charges notwithstanding the objection of any person." Pa.R.Crim.P.

585(A). That requirement raises the question at the heart of this appeal: what

principles inform whether the trial court should (or even must) assent, and

what standard does an appellate court apply when reviewing that ruling?

Most cases involving judicial review of a motion for *nolle prosequi*

involve an adversarial dispute, because a successful motion leaves the door

open for future prosecutions. "*Nolle prosequi*, if entered before jeopardy

attaches, neither operates as an acquittal nor prevents further prosecution of

the offense." ***Bucolo v. Adkins***, 424 U.S. 641, 642 (1976). Thus, a

defendant may wish to contest a *nolle prosequi* or argue that the prosecution

is attempting to circumvent the defendant's rights to a speedy trial.

- 15 -

Our Supreme Court's decision in ***Commonwealth v. DiPasquale***, 246 A.2d 430 (Pa. 1968), is an example of how a prosecutor's motion for *nolle prosequi* does not necessarily benefit the defendant. There, DiPasquale was accused of murdering several people on June 17, 1966. The trial court had granted six Commonwealth postponements, and trial was set for March 11, 1968. The Commonwealth informed the court that it "had only one witness, namely Boyesky, who could incriminate the defendant, and that Boyesky had informed the District Attorney that he would repudiate the statement he had made to the police in which he incriminated the defendant, and that if called as a witness he would plead the Fifth Amendment." ***Id.*** at 431. The Commonwealth stated it would not be able to prove its case and "was forced to request leave to *nolle pros* the indictments." ***Id.*** The trial court denied the request and forced the case to trial, which resulted in a not guilty verdict.

The Commonwealth appealed, claiming that the acquittal was a nullity as the trial court should have granted its petition. Our Supreme Court acknowledged a prosecutor's "widely recognized power to conduct criminal litigation and prosecutions on behalf of the Commonwealth, and to decide whether and when to prosecute, and whether and when to continue or discontinue a case," but those principles must be considered alongside the court's own powers, which include protection "of a defendant's rights to a fair trial and due process under the Constitution of the United States." ***Id.*** at 432.

In ***Stivala***, we addressed whether the trial court's role should be viewed any differently when the application for a *nolle prosequi* benefits the

defendant. Martin Stivala was accused of setting a building on fire, and the Commonwealth charged him with, among other crimes, felony murder. The Commonwealth had moved to *nolle prosequi* the murder charge due to evidentiary insufficiency prior to trial, which the trial court denied. The jury convicted Stivala of several crimes but was unable to reach a verdict on murder, and a mistrial was declared on that count. Stivala asserted on appeal that the trial court erred by rejecting the Commonwealth's request to dismiss that charge. He advanced a maximalist position: if the Commonwealth's motion benefits the defendant, then the trial court must grant the request. In addition, he brought a separation-of-powers argument:

> [Stivala] contends that the trial court was without power to deny the Commonwealth's motion for *nolle prosequi* because the Commonwealth has discretion whether to prosecute a matter, and for a court to interfere with that decision is a violation of the constitutional guarantee of the separation of powers. In effect, [Stivala] claims that the judicial branch may not intervene here to usurp the discretion of the executive branch.

*Stivala*, 645 A.2d at 261.

Stivala sought to distinguish **DiPasquale**, asserting that, "although the court could protect the rights of defendants, there is nothing to permit the court to protect the public good in denying a *nolle prosequi*, and thus forcing a defendant to go to trial." **Id.** at 261-62. We disagreed, analogizing the Commonwealth's assessment of the evidentiary sufficiency to cases in which a prosecutor declines to process a private complaint. We looked to our Supreme Court's decision in **Commonwealth v. Benz**, 565 A.2d 764 (Pa. 1989), *abrogated by* **In re Ajaj**, 288 A.3d 94 (Pa. 2023), which held that a

determination of the sufficiency of evidence is a judicial function and does not implicate prosecutorial discretion. We concluded, "[f]rom the Supreme Court's decision in *Benz*, *supra*, it is apparent that the determination of whether there was sufficient evidence to sustain a *prima facie* case is ultimately a judicial one and subject to the trial court's determination." *Stivala*, 645 A.2d at 262. We then reviewed the sufficiency of evidence *de novo*.

Notwithstanding this conclusion, the parties argue that *Benz* supports their position because, in *dicta*, it suggested that policy reasons are afforded special deference. In *Benz*, an off-duty police officer, Joseph Benz, was waiting for an elevator door to close when Paaron Jones approached and held the door open to speak with another person. Benz and Jones began to argue, and Jones attacked Benz. Benz pulled out his badge and gun, and identified himself as a police officer. Jones ran and Benz pursued. A second scuffle began, during which Benz's firearm accidentally discharged. Jones was shot in the head and ultimately died.

The Allegheny County District Attorney chose not to file charges, concluding that the evidence showed the men were wrestling over the gun when it discharged. Jones' mother then sought approval to file a private complaint charging Benz with voluntary manslaughter. "The District Attorney disapproved the complaint on the grounds that insufficient evidence existed to establish that a crime had been committed." *Benz*, *supra* at 767. She appealed and the Superior Court reversed, concluding that the evidence was

sufficient to establish a *prima facie* case of voluntary manslaughter. The

Commonwealth then appealed to our Supreme Court, which affirmed.

In an opinion announcing the judgment of the Court, Chief Justice Nix,

joined by Justices Larsen and Zappala, agreed with this Court's ruling that, as

a matter of law, the evidence was sufficient to establish a *prima facie* case.

The Court did not address the Commonwealth's argument that separation-of-

powers principles required the appellate courts to defer to the exercise of

prosecutorial discretion, responding that this argument was irrelevant under

the circumstances:

> The fallacy of this argument is its lack of relevancy. The
> prosecutor in this instance never purported to predicate his
> decision not to prosecute upon the exercise of his prosecutorial
> discretion to make policy. He expressly stated that the decision
> to decline prosecution resulted from his determination that the
> evidence would not sustain a *prima facie* case. Thus[,] the issue
> before both lower courts required an assessment of that legal
> judgment and not an intrusion upon prosecutorial discretion. Had
> the district attorney utilized policy discretion to refuse prosecution
> and had the lower courts reviewed that decision, the question of
> separation of powers would have been appropriately raised.
> However, we need not stray from the issues properly presented
> to decide this case.

**Benz**, **supra** at 768 (footnote omitted).

The plurality suggested in a footnote that if the Commonwealth had

cited policy reasons, the result would have been different:

> If the district attorney had stated policy reasons to support the
> decision not to prosecute, this Court would show the deference
> accorded to such a discretionary use of the executive powers
> conferred in that officer. However, because the reason stated was
> the ultimate determination by the district attorney that no crime
> had been committed, this Court is authorized to review that

- 19 -

> determination without the special deference afforded a separate branch of government.

*Id.* at 767 n.4.

**Benz** has been abrogated by **In re Ajaj***, which announced a unitary standard of review over a prosecutor's decision not to accept a private complaint, thereby rejecting the notion that policy reasons should be assessed differently than legal determinations. In that case, Luay Ajaj and Saja Ibrahim Abdulkareem Al Rabeeah had been involved in a custody dispute over their two children. Ajaj alleged that the children's mother had kept their children in Iraq in violation of court orders and sought the assistance of various law enforcement agencies. Those efforts were unsuccessful, and Ajaj sought approval to file a private complaint against their mother for violations of criminal law. An assistant district attorney disapproved the complaint, "identifying 'evidentiary issues' as the sole reason for her decision in the limited space provided on the complaint form." **In re Ajaj**, *supra* at 100. Ajaj petitioned the court of common pleas for *de novo* review as authorized by Pennsylvania Rule of Criminal Procedure 506(B)(2). The District Attorney's office filed a response, listing five separate reasons for disapproving the complaint, which referenced policy-based reasons, legal reasons, and practical/evidentiary difficulties as reasons for disapproving the complaint. The court of common pleas reversed the disapproval, and the Superior Court affirmed.

Our Supreme Court reversed. The Court explained that no precedential holding had emerged in this arena. The Court ultimately established the

following standard of review for a trial court's review of a prosecutor's decision not to approve a private complaint:

> [A] court of common pleas may only overturn that decision if the private complainant demonstrates that the disapproval decision amounted to bad faith, occurred due to fraud, or was unconstitutional. In so holding, we denounce the prior rubric, where the applicable standard of review depended on the asserted basis for the prosecutor's disapproval decision.

*Id.* at 109. This standard "ensures that a court of common pleas will afford proper deference to the discretionary decision of the prosecutor—a member of the executive branch of the Commonwealth's government." *Id.* at 109-10. Additionally, while the Court did not address what standard of review would apply on appellate review of that decision, it suggested that an abuse of discretion standard is inappropriate. *See id.* at 110 n.11.

**IV.**

With this background in mind, we now address the November 1, 2021 order.

We stress that the only order under review is the trial court's ruling on the second petition, which had the effect of benefitting Harrison but not, as far as the record goes, the intent. Certainly, the first petition had both the intent and effect of benefitting Harrison. As recounted in the factual history section, the Commonwealth intended to terminate the prosecution as a "plea bargain" of sorts. The trial court refused to grant that petition.

The Commonwealth assiduously avoids mentioning in its brief any of the reasons it tried to terminate the prosecution the first time. It maintains that

its second petition was filed due entirely to the death of a witness it deems crucial. Thus, the Commonwealth represents that it would have continued its prosecution but for the death of Harrington. Thus, the petition would have the effect of benefitting Harrison, but it was not intended to do so as the Commonwealth's request was made after a review of the evidence it could present at the forthcoming trial. Our analysis therefore does not encompass the trial court's first ruling.[5]

Because our review is limited to the Commonwealth's assertion that the evidence is insufficient to convict, we conclude that **Stivala** is largely on point. Like this case, **Stivala** involved the Commonwealth's seeking a *nolle prosequi* on the basis that the available evidence could not meet its burden to convict, and it deemed **Benz** relevant to motions that benefit the defendant. The Commonwealth asserts that the **In re Ajaj** case enshrines what **Benz** left open: if the Commonwealth makes a policy determination in concluding that

---

[5] Portions of the trial court's opinion suggest that the Commonwealth's second petition to terminate prosecution cited Harrington's death as a pretext to relitigate its first failed petition. Specifically, the trial court stated:

> This has never been a case where evidence was insufficient. The Commonwealth negotiated a plea agreement with defense counsel that included a *nolle prosequi* of the charges **and now wants that agreement enforced by the [c]ourt**; this [c]ourt did not find the agreement to give consideration to [Smith]'s rights and [Smith] was opposed to the negotiated plea agreement.

TCO at 10-11 (unnumbered; emphasis added). Notwithstanding this observation, the trial court addressed the merits of the Commonwealth's evidentiary claim. Absent an explicit finding by the trial court that the Commonwealth's cited basis for withdrawing the charge was made in bad faith, we limit our analysis to the second petition.

the evidence was insufficient to convict, then that decision must be afforded great deference. *See Benz*, *supra* at 767 n.11 (suggesting that, if the prosecution cites a policy reason, the courts "would show the deference accorded to such a discretionary use of the executive powers conferred in that officer"). The Commonwealth cites its policy of not pursuing cases that are unlikely to result in a conviction, as well as its ethical duties not to pursue cases it cannot prove beyond a reasonable doubt.

We disagree. We acknowledge that this issue presents difficulties. "Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." *Newman v. United States*, 382 F.2d 479, 480 (D.C. Cir. 1967). The Commonwealth's position is not unreasonable, as a district attorney's office has wide discretion to prosecute cases as it sees fit. However, we disagree with its position that the decision to commence a prosecution and the decision to terminate it calls for an identical standard review. That argument ignores the fact that "the scope of prosecutorial discretion changes as a criminal case proceeds, narrowing as the case nears completion." *Commonwealth v. Brown*, 196 A.3d 130, 145 (Pa. 2018). The decision to file charges is the initial step, and the most critical one. It represents the prosecutor's choice to involve, or not involve, the judicial branch. Prosecutors still enjoy wide latitude from that point on, especially before the jury has rendered a verdict. They can offer plea bargains as to

charges, agree to recommend a particular sentence, or make agreements on both points. Simultaneously, there is no absolute right to have a judge accept the parties' negotiated agreement. "While the Commonwealth and a criminal defendant are free to enter into an arrangement that the parties deem fitting, the terms of a plea agreement are not binding upon the court. Rather the court may reject those terms if the court believes the terms do not serve justice." *Commonwealth v. White*, 787 A.2d 1088, 1091 (Pa. Super. 2001). What plea bargain to offer is an act of prosecutorial discretion, yet the parties do not argue that the standards announced in *In re Ajaj* would apply to whether a trial court must accept a plea.

We therefore disagree with the argument that every exercise of prosecutorial discretion that can be described as implicating policy is governed by the *In re Ajaj* standard. That case addressed only whether a prosecutor decides to charge at all. A court's second guessing a prosecutor's decision that criminal charges are not warranted poses a serious risk that the judicial branch is encroaching on the executive branch's powers, and warrants the demanding standard set forth by *In re Ajaj*. This point is underscored by Justice Dougherty's concurring opinion, which addressed the fact that the rule does not specify a remedy if a court overrules a prosecutor's decision not to accept the private complaint. He noted the "long-held belief among the courts that [Rule 506] 'reposes an awesome power in the judiciary, namely, the authority to **order** a prosecutor … to prosecute a criminal complaint in the name of the Commonwealth.'" *In Re Ajaj*, 288 A.3d at 112 (Dougherty, J.,

concurring) (quoting **Commonwealth v. Brown**, 669 A.2d 984, 994 (Pa. 1995) (*en banc*) (Saylor, J., dissenting)) (emphasis supplied by **In re Ajaj**). Justice Dougherty is skeptical of that power, opining that "there is a colorable argument that when a court forces a district attorney to commence a prosecution he opposes — whether for legal or policy reasons — it inevitably 'interfere[s] with the prosecutor's discretionary functions' and thereby 'violates the constitutional principle of separation of powers.'" **Id.** at 112-13 (quoting **Commonwealth v. Buonopane**, 599 A.2d 681, 684 (Pa. Super. 1991)).

Forcing a prosecutor to commence prosecution is distinct from a ruling that serves to force the Commonwealth to continue a prosecution it chose to commence. The prospect of encroaching on powers reserved to the executive branch is far more pronounced when a court conscripts the District Attorney's Office into service. In contrast, the denial of the Commonwealth's petition for a *nolle prosequi* due to a claim that the evidence will be insufficient to convict at trial simply requires it to continue prosecuting a charge that it believed was worthy of criminal sanctions. And the denial of a motion seeking to withdraw all charges does not preclude the Commonwealth from amending the charges or reaching a plea bargain. The trial court's ruling does not force the Commonwealth's hand in the same way that forcing it to file a private complaint does. Forcing a prosecutor to bring charges overrides the prosecutor's authority at the very beginning of the process. Requiring a prosecutor to proceed with the charges he or she chose to file only regulates

the authority they chose to exercise. *In re Ajaj* demands a high standard for the former but it does not dictate that the same standard governs the latter.

Because we conclude that *In re Ajaj* does not control, we must decide what standard to apply. We conclude that *Stivala* applied the correct standard of *de novo* review. We see no need to address the parties' claim that the Commonwealth made a pure policy judgment in choosing not to proceed. Reasonable jurists can disagree on that point. *Compare In re Wilson*, 879 A.2d 199, 217 (Pa. Super. 2005) (*en banc*) (agreeing with trial court that a conclusion "that the likelihood of conviction is minimal and/or the likelihood of acquittal is great … is a policy determination") *with id.* at 223 (Bowes, J., dissenting) ("[T]he district attorney concluded that the likelihood of a conviction was minimal, which constituted a legal evaluation of the evidence and is subject to appellate *de novo* review."); *In re Ajaj*, *supra* at 117 (Wecht, J., concurring and dissenting) (opining that the majority and dissenting opinion in *In re Wilson* "reach wholly reasonably yet contradictory conclusions" on that point). The dispositive fact is that the Commonwealth chose to pursue charges, so we know the York County District Attorney's Office found that the case warranted prosecution both as a matter of law and policy. Had Harrington died while the Commonwealth was still deciding whether to press charges and cited his death as the reason for disapproval, the *In re Ajaj* standard would clearly apply. But the fact remains that the Commonwealth chose to file charges, and by doing so made the judiciary a part of the case.

- 26 -

That includes, of course, Rule 585's requirement that the trial court must approve the petition. The Commonwealth could always claim that some change in circumstance warranted withdrawing charges due to a concern that a conviction cannot be obtained, including a reevaluation of the available evidence. And it could always claim that conviction, even if not impossible, is unlikely, and therefore not a good use of its resources. It is difficult to see how these claims would ever amount to "bad faith" or any of the other bases set forth in *In re Ajaj*. When the Commonwealth claims that it cannot proceed for legal reasons, the *de novo* standard for a pure question of law ensures that the Rule serves its purpose.

Two recent precedents from our Supreme Court support our holding that a *de novo* standard applies to a motion for *nolle prosequi* based on an asserted lack of evidentiary sufficiency. In **Brown**, 196 A.3d 130, Brown filed a PCRA appeal from an order denying his claims for relief, which included allegations of trial counsel ineffectiveness during his capital sentencing phase. The Philadelphia County District Attorney's Office originally filed a brief opposing relief. Later, the Commonwealth and Brown filed a joint motion in which the Commonwealth confessed error, concluding that Brown was entitled to an order vacating his death sentence and imposing a sentence of life imprisonment without the possibility of parole. The Commonwealth argued that our Supreme Court was required to accept the legal concession without examining the legal merits of the underlying claim of ineffectiveness. The Commonwealth "insist[ed] that only district attorneys, as a result of their

'wide grant of prosecutorial discretion,' have the 'power to decide whether to seek or continue to seek the death penalty in view of the facts of any particular case.'" ***Id.*** at 142-43 (quoting brief). The Court disagreed. As previously quoted, the Court observed that prosecutorial discretion narrows as the case proceeds, and where the jury has reached a verdict "neither the parties, by agreement, nor this Court, absent a finding of legal error, have the power or ability" to commute the death sentence. ***Id.*** at 143.

***Brown*** is not directly on point, as the case proceeded to trial and the jury rendered a verdict. But it illustrates that a prosecutor's discretionary powers do not extend to binding a court to adopting its own preferred legal judgments. The Commonwealth here attempted to do just that, and its brief to this Court continues to emphasize its own view of the legal question instead of explaining why Harrington's testimony is so critical that a conviction cannot be obtained without that testimony.

In ***Commonwealth v. Perrin***, 291 A.3d 337 (Pa. 2023), the Philadelphia County District Attorney's Office prosecuted Perrin for a robbery. At trial, only the victim and Lynwood Perry, who admitted he participated in the robbery, testified. Perrin was convicted and, on direct appeal, the Commonwealth disclosed that an FBI agent had interviewed Curtis Brown, Perry's cellmate. The agent related that Perry had told Brown that he falsely implicated Perrin. This Court granted Perrin's request for a remand; at the hearing, both the FBI agent and Brown testified. Perry did not. The court denied relief, concluding that Perry's testimony was needed. This Court

reversed and remanded, determining that Perry was unavailable as a matter of law and his statements were admissible hearsay. The original judge was, by that time, no longer on the bench. We ordered the new judge to hold an evidentiary hearing on remand.

Upon remand, the Commonwealth and Perrin submitted a stipulation that Brown would testify consistently with his prior testimony and that this testimony was credible. The trial court refused to accept the stipulation. Our Supreme Court ultimately granted a petition for allowance of appeal, and held that the trial court did not abuse its discretion in refusing to accept a stipulation to credibility. "[A]ny attempt by the parties to force the trial court to accept a proposed stipulation as to witness credibility does not solely affect the parties and intrudes on the jurisdiction and prerogative of the court." *Id.* at 346.

*Perrin*, like *Brown*, involves a verdict entered after trial, but its core holding that a trial court is not required to accept the Commonwealth's concession of a legal point applies here. The trial court is permitted to evaluate the Commonwealth's legal conclusion for itself.

## V.

The remaining question is whether the trial court correctly concluded that Harrington's absence was not fatal to the Commonwealth's ability to pursue the charge of simple assault. This presents a pure question of law, and we review it *de novo*.

The crucial facts of this case are relatively simple, as the key is simply whether Harrison negligently grabbed and deployed his firearm.[6]  Thus, the question for the fact-finder is simply whether Harrison acted negligently under the circumstances.  Notably, there is no suggestion that this case involved a justified shooting based on Smith's conduct.  Thus, it is unclear why Harrington is so crucial given that everything from inside is captured on the cell phone video and other witnesses are available to testify as to the events outside.[7]

The Commonwealth does not elaborate on its claim that Harrington's testimony is critical, instead focusing on its preference to describe its assessment as involving a pure policy question.  Indeed, the Commonwealth does not even claim that the evidence is needed to prove its case-in-chief.  Instead, it claims that Harrington's testimony would be needed to combat an anticipated defense.  Even extending the Commonwealth the benefit of the doubt that the Commonwealth is referring to cross-examination of the Commonwealth's witnesses, the Commonwealth does not explain what that defense would be.  None of this is to say that Harrison will be found guilty;

_____

[6] The statute also requires that the Commonwealth establish that Harrison caused bodily injury with a deadly weapon.  There is no assertion that these two requirements are in dispute.

[7] The Commonwealth argues that Harrington "is critically necessary is [*sic*] establishing the uninterrupted chain and sequence of events that surround that shooting and illuminate [Harrison]'s state of mind."  Commonwealth's Brief at 17.  It is not explained how Harrington could lawfully speculate on Harrison's thought process.

the finder-of-fact may well conclude that Harrison did not act negligently. We must only determine whether the evidence available to the Commonwealth is sufficient to establish the elements of the crime if accepted by the fact-finder, and we conclude that it does. That conclusion is corroborated by the fact that the Commonwealth did not call Harrington at the preliminary hearing. We therefore conclude that, as a matter of law, Harrington's unavailability did not require the trial court to grant the Commonwealth's petition.[8]

Order affirmed.

President Judge Panella joins this opinion.

Judge McCaffery files a concurring opinion in which President Judge Panella joins.

---

[8] We do not express any opinion on whether the trial court may accept the Commonwealth's concession that the evidence is insufficient without any examination of the merits. **See Perrin**, 291 A.3d at 346 n.7 (declining to "address the question of whether the trial court, in its discretion, may accept a proposed stipulation as to witness credibility"). We hold only that the trial court is not obligated to do so.