337 A.2d 545
COMMONWEALTH of Pennsylvania
v.
Joe TAYLOR, Jr., Appellant (two cases).

Supreme Court of Pennsylvania.

Submitted Nov. 22, 1974.

Decided May 13, 1975.

558

Abraham T. Needleman, Needleman, Needleman, Tabb & Eisman, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, Maxine J. Stotland, Asst. Dist. Atty., Abraham J. Gafni, Deputy Dist. Atty. of Law for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

Appellant, Joe Taylor, Jr., was charged with murder, involuntary manslaughter and operating an automobile under the influence of alcohol in the death of fourteen-year-old Herbert Palmer. Trial was had before a judge sitting without a jury which resulted in a finding of murder in the second degree. Appellant was also convicted of operating an automobile under the influence of alcohol. Post-trial motions were filed and subsequently denied. A sentence of ten years probation was imposed on the murder charge and a term of from eleven and one-half to twenty-three months imprisonment (with work release recommended) on the bill charging appellant with operating a motor vehicle under the influence of alcohol. These appeals follow.

The sole issue presented in the instant appeal is whether the evidence was sufficient to sustain a conviction of murder in the second degree. The crux of the disagreement is whether the evidence established the malice necessary to sustain a verdict of murder.

" 'To sustain a conviction of murder of either degree, the evidence must establish that the killing was committed with malice. *Commonwealth v. McFadden,* 448 Pa. 277, 292 A.2d 324 (1972).' *Commonwealth v. Coleman,* 455 Pa. 508, 510, 318 A.2d 716, 717 (1974). '[Malice] consists either of an express intent to kill or inflict great bodily harm, or of a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty" indicating an unjustified disregard for the probability of death or great bodily harm and an extreme indifference to the value of human life. *Commonwealth v. Carroll,* 412 Pa. 525, 194 A.2d 911 (1963).' *Commonwealth v. Chermansky,* 430 Pa. 170, 175, 242 A.2d 237,

240–41 (1968). See *Commonwealth v. Coleman,* supra. '[The existence of legal malice may be inferred and found from the attending circumstances of the act resulting in the death. *Commonwealth v. Bowden,* Pa., 309 A.2d 714 (1973).' *Commonwealth v. Coleman,* supra, 455 Pa. at 510, 318 A.2d at 717; *Commonwealth v. Chermansky* supra; *Commonwealth v. Lawrence,* 428 Pa. 188, 193, 236 A.2d 768, 771 (1968)." *Commonwealth v. Boyd,* 461 Pa. 17, 22, 334 A.2d 610, 613 (1975).

And the test of the sufficiency of the evidence is:

" '[w]hether, accepting as true all the evidence and all [the] reasonable inferences therefrom upon which if believed the [finder of fact] could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes for which he has been convicted.' *Commonwealth v. Bayard,* 453 Pa. 506, 509, 309 A.2d 579, 581 (1973); *Commonwealth v. Paquette,* 451 Pa. 250, 301 A.2d 837 (1973). In this regard it must be noted that the finder of fact has the right to reject part or all of the defendant's testimony even if uncontradicted. *Commonwealth v. Chermansky,* 430 Pa. at 174, 242 A.2d at 240." *Commonwealth v. Coleman,* 455 Pa. 508, 510, 318 A.2d 716, 717 (1974).

On June 30, 1972, at approximately 3 P.M., two young boys, one age 14, the deceased herein, and his 13-year-old companion, were struck by an automobile while riding their bicycles in the Fairmount Park area of the City of Philadelphia. The deceased, Herbert Palmer, along with Ronald Beatty and another friend, were leaving a recreational facility provided by the city known as John B. Kelly Pool. They were proceeding on their bicycles to the park area. They arrived at the intersection of South Concourse Drive and 42nd Street Drive, both black-top highways which were free of potholes or other obstruc-

tions. The weather was dry and clear and there were no visible obstructions on the road itself.

Several individuals testified that they observed appellant driving at a high rate of speed (the testimony indicated that he was travelling between 60 and 80 miles per hour), pass another vehicle and strike two of the three youngsters, hurling their bodies into the air. The vehicle driven by appellant continued to the next intersection where other vehicles were stopped waiting for the traffic signal to change. Appellant then reversed his vehicle and returned towards the scene of the accident. One of the eye-witnesses testified that after he observed the appellant strike the two youngsters and continue his progress, that he began to blow his horn in an attempt to stop appellant. Appellant did not respond and stopped only when he reached the intersection where other vehicles had stopped waiting for the traffic signal.

The testimony of the officer at the scene stated that the body of Ronald Beatty was lying on South Concourse Drive in the eastbound lane of traffic, 99 feet west of 42nd Street Drive. Herbert Palmer was lying on the eastbound lane of South Concourse Drive at a point of 115 feet west of 42nd Street Drive. The two bikes were on top of each other at a point 89 feet west of 42nd Street Drive at or about the center of the highway. The appellant's vehicle, a 1969 Buick, had a dent in the front hood on the left side near the front grill. The windshield was cracked from the outside at two places on the left side. Upon confronting the appellant, the officer was aware of a strong odor of alcohol on appellant's breath. He described his speech as slurred and his gait so unsteady that he (appellant) required the assistance of his son, daughter and the officer to stand.

An examination by the Police Surgeon at 7 P.M. on the same evening resulted in the conclusion that the appellant was under the influence of intoxicating liquor and

was not able to operate a motor vehicle safely. The doctor testified that although several hours had elapsed between the incident and the examination, appellant was still under the influence of intoxicating liquor. The breathalyzer test, administered at 6:40 P.M., registered a reading of .10 blood alcohol.

In his defense, appellant stated that he was en route from work to his home, that he was driving at approximately 30–35 miles per hour when he attempted to pass another vehicle. He said that he saw a bicycle at least two or three car lengths in front of him and that although he applied his brakes, his automobile skidded and that he heard a bump on the wheel and the top of the hood but that he did not stop immediately. He further testified that he only had one drink that day at about 10 A.M. His daughter and son were called to testify that they had not observed their father drinking. Appellant also testified that he was coming directly from work, travelling his normal route to his home, a trip which usually takes approximately one-half hour. However he failed to explain why he was still en route at the time of the incident, one hour and twenty minutes from the time he stated he left his place of employment. Further, appellant conceded that the weather was clear and dry and that there were no obstructions to impair his view of the highway. Appellant also testified that he had travelled this route for a number of years and was aware of the location of the pool and recreational area and that a number of children frequented this section.

■ In determining the sufficiency of the evidence to support a finding of second degree murder where death results from a motor vehicle accident, it is crucial to determine whether the facts and circumstances surrounding the incident reflect malice which distinguishes murder from other types of homicide. In addressing this is-

sue, this Court in *Commonwealth v. Aurick,* 342 Pa. 282, 19 A.2d 920 (1941), stated:

"On the other hand, the proof of negligence to support a charge of *involuntary manslaughter* need *not* be proof of acts or omissions exhibiting *reckless, wicked and wanton* disregard of the safety of others. *Negligence of that high degree* will support a charge of *murder in the second degree,* as this court recognized in *Commonwealth v. McLaughlin,* 293 Pa. 218, 142 A. 213. In *Com. v. Mayberry,* 290 Pa. 195, 138 A. 686, 688, this court, in an opinion by the present Chief Justice, said: 'Had the appellant at bar dashed down Highland avenue and wantonly, recklessly and in disregard of consequences hurled his car against another, or into a crowd or over a person on sidewalk or street, and death resulted, then, considering the kind of instrumentality that an automobile is, we are not prepared to say that he ought not to face the same consequences that would be meted out to him if he had accomplished death by wantonly and wickedly firing a gun. *People v. Brown,* 53 Cal.App. 664, 200 P. 727.'

In *Com. v. Beattie,* 93 Pa.Super. 404, 408, that court said: 'If this defendant wantonly, recklessly and in disregard of consequences drove his car into the Zurn car and death resulted, we are not prepared to say that "a consciousness of peril or probable peril to human life was not to be imputed to defendant." (*Shorter v. State,* 147 Tenn. 355, 247 S.W.2d 985) which would establish the element of malice which is requisite in murder.' " (Emphasis in original) *Id.* at 290, 19 A. 2d at 921.

From the evidence presented to the trier of fact, we are satisfied that there was sufficient basis to find the recklessness of consequence and a mind regardless of social duty which is necessary to establish the presence of malice. The intoxicated condition of the driver, the excessive rate of speed which he was travelling, the distance

the bodies and bicycles were propelled upon impact, his awareness that this was an area where children were likely to traverse, the absence of any physical or climatic condition which could explain or contribute to the happening of the accident and the appellant's failure to stop immediately after impact, all exhibit the wickedness of disposition, the hardness of heart, cruelty and recklessness associated with murder in the second degree.

■■ The appellant, in his brief, attempts to construe the *Aurick* decision as requiring a deliberate intention to strike the victim. He would have us find that malice is not present unless it is established that the victim was "intentionally run down" by the operator of the vehicle. Such a view fails to recognize the distinction between first and second degree murder. The presence of a deliberate intent to kill while a prerequisite for murder in the first degree is not required for murder in the second degree. As pointed out in *Commonwealth v. McLaughlin*, 293 Pa. 218, 222, 142 A. 213, 215 (1928), malice is present either where it is shown that the accused intended to strike the victim or "was recklessly disregardful of [his] safety, . . ." The argument of the appellant fails to perceive that between the recklessness or culpable negligence necessary to support the charge of involuntary manslaughter, see *Commonwealth v. Busler*, 445 Pa. 359, 287 A.2d 783 (1971), and the specific intent to kill which is a prerequisite of murder of the first degree, there is a class of wanton and reckless conduct which manifests such an extreme indifference to the value of human life which transcends the negligent killing and reaches the level of the malice which supports a verdict of murder in the second degree.

We therefore do not accept the argument that it is crucial that the appellant did not see the victim until just before the moment of impact. Under the evidence, a finder of fact could properly conclude that the intentional acts of appellant represented a wanton and willful dis-

regard of the unreasonable risk to life created by his conduct. Further, the trier of fact was equally justified in imputing to the appellant a consciousness of the peril or probable peril to human life his actions caused.

That a motor vehicle may be the instrumentality used in the commission of the crime of murder has long been recognized by legal authorities. The issue is not the nature of the instrument, but the frame of mind of the actor in the deployment of that instrument.

"If the defendant acts with malice aforethought and with such state of mind strikes another with his automobile, thereby causing the death of the latter, the offense is murder, the same as if any other instrument of destruction had been employed with like mental state. Therefore, malice may be inferred when the driver of a motor vehicle acts recklessly or wantonly, manifesting a depravity of mind and disregard of human life, as when he drives an automobile in such a manner as directly to imperil human life and without regard for the presence of persons on a busy street, and his conviction of murder in the second degree will be sustained when, as a direct result of such recklessness and wantonness, a person is killed." Anderson, 3 Wharton's Criminal Law and Procedure, § 971, at 137–138 (1957). (Footnotes omitted).

See also Huddy, 9 Encyclopedia of Automobile Law, § 35, at 71–72 et seq. (1931).

Judgments of sentence affirmed.

ROBERTS, J., filed a concurring opinion in which JONES, C. J., and EAGEN and MANDERINO, JJ., join.

ROBERTS, Justice (concurring).

■ I concur in the result because the record supports a finding that appellant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm to another, and

therefore acted maliciously. See W. LaFave & A. Scott, Handbook on Criminal Law § 70 (1972); cf. 18 Pa.C.S. §§ 302(b)(3), 2501(a) (1973); compare Model Penal Code § 210.2 (1974).

JONES, C. J., and EAGEN and MANDERINO, JJ., join in this concurring opinion.