**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Joseph B. ZEKANY, Defendant–Appellant.**

**No. 90CA0162.**

Colorado Court of Appeals, Div. V.

Dec. 12, 1991.

Rehearing Denied Feb. 20, 1992.

Certiorari Denied Aug. 3, 1992.

Gale Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Cheryl A. Linden, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Robert S. Berger, P.C., Robert S. Berger, Denver, for defendant-appellant.

Opinion by Judge RULAND.

Defendant, Joseph B. Zekany, appeals from the judgment of conviction entered upon a jury verdict finding him guilty of first degree extreme indifference murder. We affirm.

After drinking with friends at a bar, defendant determined to hold an early morning party at his home. Various people at the bar were invited including the decedent and his three friends.

After the party was underway, the victim and defendant engaged in a verbal argument and in a minor physical confrontation. More angry words were exchanged between the victim and defendant as the victim left the residence with his friends.

As the victim and his friends approached the victim's pickup in defendant's front yard, defendant was told that someone in the group had a martial arts weapon and that he should get a bat to defend himself. Instead, defendant picked up a .300 calibre military-type rifle. He was told a rifle was not needed, and he responded negatively to that comment.

The victim and his friends entered the pickup and started to drive away. Defendant fired the rifle, shattering a window in the pickup and killing the victim who was seated on the passenger's side of the ve-

**776**

hicle. In addition to the occupants of the vehicle, the record reflects that other people were in the vicinity of the pickup at the time the shot was fired.

There was a contradiction in the evidence as to where defendant was located when he fired the shot. Some witnesses placed defendant at the front door of his home while others placed him at his front bedroom window. Defendant claimed that the rifle accidentally discharged when he was pushed from behind by an individual attending the party.

After defendant was in custody, a blood alcohol test was administered which revealed that the alcohol content of defendant's blood was .193 grams of alcohol per 100 milliliters of blood.

## I

Defendant initially contends that the extreme indifference murder statute, § 18–3–102(1)(d), C.R.S. (1986 Repl.Vol. 8B), is facially unconstitutional. However, this court does not have jurisdiction to resolve that issue. *See* § 13–4–102(1)(b), C.R.S. (1987 Repl.Vol. 6A); *see also People v. Jefferson,* 748 P.2d 1223 (Colo.1988).

## II

Defendant next argues that there was insufficient evidence to convict him of extreme indifference murder. Specifically, defendant asserts that the prosecution did not prove the universal malice element of the crime, which requires proof of an "extreme indifference to the value of human life generally." *See* § 18–3–102(1)(d), C.R.S. (1986 Repl.Vol. 8B). Instead, defendant argues that the evidence proved that his conduct was directed only at the victim. We disagree.

The standard for appellate review of this contention is whether the relevant evidence, viewed as a whole and taken in a light most favorable to the prosecution, was sufficient to support a conclusion by a reasonable person that defendant is guilty beyond a reasonable doubt. *People v. Gonzales,* 666 P.2d 123 (Colo.1983); *People v. Braxton,* 807 P.2d 1214 (Colo.App.1990).

Pursuant to that standard, the jury here could reasonably find that defendant acted with universal malice. While defendant and decedent argued heatedly just prior to the shooting, the evidence also established that defendant knew the rifle he fired was dangerous and that it was powerful enough to strike more than one person with each bullet fired. Notwithstanding the fact that he recently completed a course for hunters in firearm safety, defendant shot the rifle toward a moving pickup containing four people, and the path of the bullet endangered both the lives of people standing near defendant's house and those riding in the pickup.

We conclude that this evidence was sufficient for the jury to find that defendant acted with universal malice.

## III

Defendant tendered an instruction incorporating the statutory elements of the crime together with various other factors discussed in *People v. Jefferson, supra,* pertinent to the concept of universal malice including:

> The nature, duration and intensity of the actor's culpable state of mind, his manner of killing, his relationship to the victim(s), and the presence or absence of mitigating factors....

The trial court refused this instruction and instead utilized *COLOJI–Crim.* No. 9:04 (1983). Defendant contends the use of this instruction and rejection of his proffered instruction was error because the distinctive nature of extreme indifference murder can only be understood by examining the "circumstances" of the offense as outlined in *Jefferson.* We conclude that the trial court did not err in instructing the jury.

A jury must be correctly instructed to enable it to assess whether every element of an offense has been proved beyond a reasonable doubt. *See Key v. People,* 715 P.2d 319 (Colo.1986).

In *Jefferson,* our supreme court discussed the historical origins of extreme

indifference murder in this state and the distinction between this crime and second degree murder:

> [T]he jury must make judgments of a distinct kind beyond what is necessary for a verdict of guilty to second-degree murder.... A variety of factors may exhibit a legally sufficient degree of cold-bloodedness or aggravated recklessness to support the jury's finding that the defendant's conduct should be penalized as first-degree murder under the extreme indifference statute.

The defendant's tendered instruction included some of the factors specifically referred to in *Jefferson*, however, as we read the *Jefferson* opinion, the court did not intend this enumeration to be either exhaustive or essential to the jury's understanding of the offense.

Here, the jury instructions reflected the statutory language defining the offense and also included definitions of "knowingly" and "universal malice." We therefore conclude that these instructions were sufficient. *See People v. Castro,* 657 P.2d 932 (Colo.1983).

### IV

After the prosecution cross-examined defendant, the jury was excused for the day. The next morning, the court apologized for the late start and asked defense counsel if there would be any redirect examination of defendant. Counsel replied in the negative.

■ After the prosecution presented a rebuttal witness, there was an off-the-record discussion between the court and counsel. The court then informed the jurors that: "I think all of us anticipated that there might be further testimony from the Defendant, and there [are] some witnesses who were going to be coming in slightly later this morning."

Defendant now contends that this comment by the trial court erroneously highlighted defendant's failure to testify further after the prosecution's cross-examination and thereby deprived him of a fair trial. We disagree.

The court did not advise the jury that defendant was required to put on more testimony or evidence. Rather, the court was merely explaining why there would be a delay in the proceedings. Moreover, any impropriety in the court's statement was dispelled by both the court's curative oral instructions and written instructions which informed the jury that the defendant is never required to produce evidence. The jury is presumed to have heeded these instructions, and we perceive no basis for concluding otherwise. *People v. Moody,* 676 P.2d 691 (Colo.1984).

### V

The prosecution requested that two witnesses identify color photographs depicting the victim lying dead at the scene of the crime. The witnesses cried after viewing the pictures. Defendant argues that the use of these pictures was an improper attempt by the prosecution to inflame the jury. This contention lacks merit.

■ Photographs may be introduced which graphically portray the scene of the crime, appearance of the victim, and other facts which are competent for a witness to describe in words. *People v. Sepeda,* 196 Colo. 13, 581 P.2d 723 (1978); *see also People v. Moreland,* 193 Colo. 237, 567 P.2d 355 (1977).

■ In determining which photographs should be admitted, the trial court must exercise its discretion and weigh the probative value of this evidence against its inflammatory effect. *People v. Sepeda, supra; People v. Moreland, supra.* Here, both photographs were initially admitted during direct examination of a police officer who used them to illustrate his description of the scene and the location of the decedent when he first arrived.

■ Based upon our review of the photographs, the testimony of the police officer and other witnesses, we conclude that the trial court did not abuse its discretion. The trial court restricted further use of the photographs after they were viewed by the witnesses in question. The photographs were relevant and probative and

were not so inflammatory as to be inadmissible. Finally, the limited emotional reaction of the witnesses to these photographs did not, in our view, prejudice the jury. *See People v. Sepeda, supra.*

## VI

Defendant next argues that the trial court erred in instructing the jury concerning the legal consequences of voluntary intoxication. Defendant argues that, while voluntary intoxication is not a defense to a general intent crime, the jury should have been instructed that it could consider intoxication as one of the potential mitigating factors under *Jefferson.* We disagree.

The General Assembly has made clear that voluntary intoxication is a defense only to specific intent crimes such as homicide with deliberation. *See* § 18–1–804, C.R.S. (1986 Repl.Vol. 8B); *Watkins v. People,* 158 Colo. 485, 408 P.2d 425 (1965); *People v. Barnhart,* 638 P.2d 814 (Colo. App.1981). Extreme indifference murder, however, requires only that defendant have the general intent to act "knowingly." Section 18–3–102(1)(d), C.R.S. (1986 Repl. Vol. 8B); *see People v. Gallegos,* 628 P.2d 999 (Colo.1981).

Other jurisdictions which have considered statutes similar to § 18–3–102(1)(d) have generally held that intoxication is not an affirmative defense to this charge. *See* W. LaFave & A. Scott, *Criminal Law* § 71, (1972).

Contrary to defendant's contention, we do not view use of the term "universal malice" in the statute as converting the crime, in effect, into a specific intent crime. As noted by the court in *Jefferson:*

The 1981 amendment reaffirmed the element of cold-bloodedness, as represented by the phrase 'under circumstances *evidencing an attitude of universal malice* manifesting extreme indifference to the value of human life *generally.'* ... This element really refers to motive or provocation, and serves to connect the 1981 amendment with the earliest attempts in this state to proscribe extreme indifference murder....

Because the term addresses motive or provocation, we conclude that it does not convert the crime into a specific intent crime.

We have considered and find no merit in defendant's other contentions.

To the extent we have jurisdiction to do so, the judgment is affirmed.

REED, J., concurs.

DUBOFSKY, J., dissents.

Judge DUBOFSKY dissenting.

I respectfully dissent. In my view, the trial court erred in failing to instruct the jury that intoxication was an affirmative defense to the charge of universal malice/extreme indifference murder.

Universal malice/extreme indifference murder is one of several forms of murder included in our first degree murder statute. *See* § 18–3–102(1), C.R.S. (1986 Repl.Vol. 8B). Since the consequences for committing first degree murder are greater than those for second degree murder, the *mens rea* and/or actions which justify a conviction in the former category must be different and greater than that *mens rea* and actions which fall into the latter category. *See People v. Jefferson,* 748 P.2d 1223 (Colo.1988). Furthermore, a defendant's *mens rea* and the criminality of his actions in committing universal malice/extreme indifference should be roughly equivalent to other first degree murder offenses. *See People v. Jefferson, supra.*

Historically, homicides resulting from universal malice/extreme indifference were considered part of the "malice aforethought" first degree murder crimes. R. Perkins, *Criminal Law* 36 (2d ed. 1969); *Gautney v. State,* 284 Ala. 82, 222 So.2d 175 (1969).

Universal malice/extreme indifference homicide may involve such a wanton and willful disregard of an unreasonable risk to human life as to constitute malice aforethought. R. Perkins, *Criminal Law, supra; Brewer v. State,* 140 Tex.Crim. 9, 143 S.W.2d 599 (1940).

A mental state constituting malice afore-thought does not presuppose or require any ill will or hatred of the particular victim. *People v. Conley*, 64 Cal.2d 310, 49 Cal. Rptr. 815, 411 P.2d 911 (1966). Thus, a person who acts with wanton disregard for human life and in such a way as to create a situation in which there is a high degree of probability that a death will result, acts with malice aforethought. *People v. Love*, 168 Cal.Rptr. 407, 111 Cal.App.3d 98 (1980).

In Colorado, the previous homicide stat-utes were phrased in terms of malice afore-thought. Murder in the first degree result-ed from deliberate and premeditated killing of a human being with malice afore-thought. Murder in the second degree con-sisted of an unlawful killing with implied malice aforethought but without premedita-tion and deliberation. *Walker v. People*, 175 Colo. 173, 489 P.2d 584 (1971).

These concepts in the earlier homicide statutes were carried forward in our present statutes but without the malice aforethought terminology. For example, our present first degree murder with delib-eration statute equates to Colorado's prior murder with both malice aforethought and deliberation, and our second degree murder statute roughly equates to the prior malice aforethought without deliberation statute. *See* §§ 18–3–102(1) and 18–3–103(1)(a), C.R.S. (1986 Repl.Vol. 8B); Colo.Sess.Laws 1971, ch. 121, § 40–3–102 at 418; Colo.Sess. Laws 1971, ch. 121, § 4–3–103 at 418.

The decision to place universal malice/ex-treme indifference homicide in the first de-gree murder statute along with homicide after deliberation and specific intent dem-onstrates the General Assembly's intention to equate the elements involved in these two offenses. *See People v. Conley, su-pra.*

The premeditation or deliberation re-quirement of first degree murder does not require a "plan" or protracted considera-tion of the killing by the defendant. In-stead, it requires only the time necessary for one thought to follow another. *Hinton v. People*, 169 Colo. 545, 458 P.2d 611 (1969); *Hammil v. People*, 145 Colo. 577, 361 P.2d 117 (1961).

In my view, the extreme indifference first degree murder statute requires more premeditation and wrongful intent than the "knowingly" *mens rea* found in our second degree murder statute. *See People v. Jef-ferson, supra.* Universal malice requires a malevolent or vicious outlook which by im-plication requires forethought or delibera-tion that is very similar to the *mens rea* deliberation and specific intent requirement of § 18–3–102(1)(a), C.R.S. (1986 Repl.Vol. 8B).

Several jurisdictions have held that mal-ice aforethought is an inherent part of their extreme indifference murder statutes. *People v. Love, supra; Commonwealth v. Taylor*, 461 Pa. 557, 337 A.2d 545 (1975); *Gautney v. State, supra.*

In *People v. Jefferson, supra*, the majori-ty recognized the premeditation aspect of universal malice when it referred to such murder as cold-blooded. Here, the jury was instructed that cold-bloodedness was an aspect of universal malice/extreme in-difference homicide.

The term "cold-blooded" is used to desig-nate a willful, deliberate, and premeditated murder. *Skeggs v. State*, 24 Ala.App. 307, 135 So. 431 (1931); *State v. Wieners*, 66 Mo. 13 (1877). The expression "in cold blood" designates a homicide in which there are no circumstances in mitigation or in justification which excuse the killing. *See State v. Robison*, 54 Nev. 56, 6 P.2d 433 (1931). The cold-blooded aspect of uni-versal malice/extreme indifference murder brings it in line with the deliberation/spe-cific intent requirements of § 18–3–102(1)(a). The cold-bloodedness element makes this offense akin to a specific intent crime to which intoxication is available as a defense.

Furthermore, the General Assembly in § 18–3–103, C.R.S. (1986 Repl.Vol. 8B) spe-cifically stated that self-induced intoxi-cation is not a defense to murder in the second degree. It has not negated the availability of that defense to first degree murder and probably intended that it be available as a defense to universal mal-ice/extreme indifference murder.

Accordingly, I believe self-induced intoxication can negate the *mens rea* required for universal malice/extreme indifference murder, and thus, the absence of a jury instruction to that effect here requires reversal.