J-A23037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TAAJ QAADIR BLAN | : | |
| | : | |
| Appellant | : | No. 62 MDA 2024 |

Appeal from the Judgment of Sentence Entered November 1, 2023
In the Court of Common Pleas of Lackawanna County
Criminal Division at No:  CP-35-CR-0002467-2022

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY STABILE, J.:          **FILED: MARCH 31, 2025**

Appellant, Taaj Qaadir Blan, seeks review of the judgment of sentence entered by the Court of Common Pleas of Lackawanna County (trial court).  In 2023, Appellant was found guilty following a jury trial of third-degree murder, and the trial court sentenced him to a prison term of 18 to 40 years.  We affirm.

The charges against Appellant stemmed from a shooting in 2022.  On the night in question, Appellant drove with the son of his father's girlfriend (Ryan Haynes) to the apartment complex where the victim lived.  The victim, Pernell Simmons, had been in a dispute with Haynes, and Appellant planned to discuss the quarrel with him.

As they arrived at the parking lot of the complex, Appellant beeped his car horn.  Simmons stepped out of his apartment and walked to the parking lot. Appellant remained in his vehicle as he and Simmons began arguing, and

while still seated in his vehicle, Appellant drew his firearm and opened fire at Simmons. Seven shots were discharged, and Simmons was struck four times, causing fatal injuries. Appellant stepped out of his vehicle to pick up the casings that had been discharged from his gun. He and Haynes then drove away.

Later that night, police obtained video surveillance footage of the incident, and they used that recording to identify Appellant as the shooter. The next morning, officers observed Appellant's home, where they saw individuals handling items that could potentially be used as evidence against Appellant. Angelo Smith, Appellant's father, was seen removing an object from Appellant's car. Erica Searcy was seen with the clothing Appellant had worn at the time of shooting, as well as the firearm he had used. Margaret DelCastillo, Appellant's mother, was also seen taking Appellant's clothing out of his home.

Appellant, Smith, Searcy, and DelCastillo all drove from Appellant's home to an unknown destination. DelCastillo drove Appellant's car, a silver Scion, while Appellant, Smith, and Searcy drove away in a white Chrysler. Before they could complete their trip, they were simultaneously apprehended by police during a traffic stop.

The police obtained search warrants for both vehicles. A search of the vehicles yielded the firearm used to kill the victim, as well as the clothing Appellant had worn the previous evening. Soon thereafter, the

Commonwealth charged Appellant with first-degree murder and third-degree murder.

Smith, Searcy, and DelCastillo were Appellant's co-defendants, as each of them were implicated in the concealment of the evidence discussed above. They were charged with the misdemeanor offenses of hindering apprehension; tampering with evidence; and obstructing the administration of law. The cases of these co-defendants were consolidated for trial purposes, and they were accordingly tried together during the same proceedings.

At trial, Appellant and Haynes both testified that the shooting was a justified act of self-defense because Simmons had made threatening comments to them, namely, that the was going to "air out" Appellant's car. Appellant further attempted to justify his use of force by testifying about the recent killing of his cousin in Philadelphia. He intended to testify that his cousin had been murdered moments after being told by the killer that he was going to "air him out," the same phrase Simmons had used. **See** N.T. Trial, 8/3/2023 (a.m.), at 49-54.

The Commonwealth objected to such testimony on the ground that the language used by the killer of Appellant's cousin was irrelevant and inadmissible hearsay. The objection was sustained in part by the trial court, as Appellant was allowed to testify about the circumstances of his cousin's shooting and the effect it had on his state of mind. Appellant went on to testify that his cousin's death had been going through his mind at the time he shot Simmons. **See id**., at 54-55. After he did so, no further questions on

that subject were asked of Appellant by defense counsel. **See id**., at 55. In closing, defense counsel summarized Appellant's testimony about his state of mind, including the fact that his cousin had been fatally shot three weeks before Simmons was killed.

Prior to deliberations, the jury was verbally given a self-defense instruction by the trial court, explaining the lawful use of deadly force and the duty to retreat. While deliberating, the jury sent out questions to the trial court asking for a description of the charges and the definition of "malice," which was the intent element of the murder charges.

The trial judge sent the jury written instructions describing the charges and the definition of malice but initially denied defense counsel's request for the written self-defense instruction to go to the jury. The jury later again asked for further clarification on the duty to retreat. The trial court responded by sending back the entire written instruction on self-defense, which addressed the topic raised in the jury's second request. **See** N.T. Trial (p.m.), 8/4/2023, at 9-10.

At the conclusion of the trial, Blan was found guilty and sentenced as outlined above. He filed post-trial motions, which were denied. Appellant timely appealed, and both he and the trial court complied with Pa.R.A.P. 1925. **See** Trial Court 1925(a) Opinion, 3/11/2024, at 7-12 (giving the reasons why the judgment of sentence should be affirmed). In his brief, Appellant raises three issues for our consideration:

I. Whether the trial court erred and abused its discretion by not severing the trial of [Appellant] from that of his co-defendants where [Appellant] was charged with homicide and the co-defendants were charged with significantly less serious offenses[.]

II. Whether the trial court erred and abused its discretion by not allowing [Appellant] to testify regarding the homicide death of his cousin in the weeks leading up to the death in this case where such testimony would have helped the jury to understand [Appellant's] state of mind and actions on the date in question[.]

III. Whether the trial court erred and abused its discretion by not sending out a printed copy of the justification/self-defense instruction along with the charges when the jury requested a written description of the counts against [Appellant] and a definition of malice[.]

Appellant's Brief, at 5-6 (numbering added, suggested answers omitted).

Appellant first claims that he is entitled to relief because the trial court should have severed his case from that of his three co-defendants. This claim was waived.

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "Appellate courts in Pennsylvania routinely decline to entertain issues raised on appeal for the first time." *Commonwealth v. Spotz*, 870 A.2d 822, 836 (Pa. 2005). "A party cannot rectify the failure to preserve an issue by proffering it in response to a Rule 1925(b) order." *Commonwealth v. Monjaras-Amaya*, 163 A.3d 466, 469 (Pa. Super. 2017) (citations omitted).

Here, Appellant did not file a pre-trial motion asking for his case to be severed from that of his co-defendants. The trial court was therefore never given the opportunity to determine whether a severance of the cases was

warranted. It was not until appellate proceedings began that Appellant raised this issue for the first time.

The failure to include within a pre-trial omnibus motion a request for severance results in a waiver of that request. **See** Pa.R.Crim.P. 578 (requiring that all pretrial requests for relief, including severance, must be made in one omnibus motion); Pa.R.Crim.P. 579 (omnibus motions must be filed within 30 days after the date of a defendant's arraignment); and Pa.R.Crim.P. 583, cmt. (any request for severance must ordinarily be made in an omnibus motion or it is waived). Thus, due to this waiver, Appellant cannot prevail on his severance claim.

Even if the claim had been preserved, we would find that it lacks merit. Under Pa.R.Crim.P. 582(A)(2), co-defendants may be tried together "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Further, "[t]his rule of joinder parallels the case law which recognized that joint trials of co-defendants [are] advisable when the crimes charged grew out of the same acts and much of the same evidence is necessary or applicable to both defendants." **Commonwealth v. Morales**, 494 A.2d 367, 372 (Pa. 1985) (citations omitted).

A court may sever the cases of co-defendants where "it appears that any party may be prejudiced by offenses or defendants being tried together."

Pa.R.Crim.P. 583. The defendant has the burden of demonstrating prejudice. *See Commonwealth v. Holt*, 273 A.3d 514, 541 (Pa. 2022).

There is no question in the present matter that the cases of Appellant and his co-defendants were properly joined for trial. Appellant was charged with offenses related to the shooting death of Simmons, and his co-defendants were all charged with offenses stemming from their efforts to dispose of evidence of those crimes the morning after they were committed. Accordingly, it was alleged that these individuals participated in the same acts, transactions, or series of acts or transactions which constituted the charges against Appellant. *See* Pa.R.Crim.P. 582(A)(2).

Appellant's attempt to dispose of the evidence helped the prosecution prove his consciousness of guilt. By the same token, the culpability of the co-defendants hinged in part on the fact that the physical evidence found in their custody (the murder weapon and the clothes Appellant wore during the shooting) could be used as evidence against Appellant. Thus, much of the evidence presented at the joint trial was necessary or applicable as to all the defendants, making joinder proper.

Even had Appellant timely moved to sever his case, the record does not indicate how prejudice could have been shown. In his brief, Appellant argues that he was prejudiced by the joinder of the cases because the prosecution introduced evidence that his father was standing outside his home the morning after the shooting in manner that appeared suspicious to an arresting

officer; the prosecution also introduced evidence that his mother washed his clothes the night of the shooting, suggesting that Appellant was involved in a conspiracy to destroy evidence. Appellant asserts that this evidence, pertaining to the conduct of his parents, allowed the jury to improperly infer Appellant's guilt.

These arguments are unavailing. Significantly, Appellant was apprehended by police during a traffic stop along with his co-defendants while all of them were in possession of the murder weapon and the clothing Appellant wore when he shot Simmons. "It is . . . undisputed that attempts by a defendant to suppress evidence are admissible to demonstrate his or her consciousness of guilt." *Commonwealth v. Paddy*, 800 A.2d 294, 319 (Pa. 2002) (citing *Commonwealth v. Johnson*, 668 A.2d 97, 106 (Pa. 1995)). A defendant's uncharged, prior bad act may be admissible as proof of his consciousness of guilt. *See Commonwealth v. Ivy*, 146 A.3d 241, 251 (Pa. Super. 2016); *see also Commonwealth v. Carter*, 320 A.3d 140, 146-47 (Pa. Super. 2024) (same).

Appellant could not have suffered undue prejudice from having the jury consider evidence of the co-defendants' attempts to dispose of evidence linking Appellant to the shooting. The allegations against all of the co-defendants were interrelated with Appellant's case. While not charged with conspiring to dispose of evidence, Appellant's participation in the co-defendants' crimes was nevertheless admissible, as it evidenced his

consciousness of guilt. The jury was therefore free to consider the conduct of Appellant's co-defendants when determining if Appellant was guilty of the charges against him. Thus, no relief is due on this first claim.

Appellant's second claim is that the trial court abused its discretion by not allowing him to testify about certain aspects of his cousin's murder, which took place about three weeks prior to the death of Simmons. According to Appellant, the trial court barred him from testifying that his cousin's murderer had threatened to "air out" his cousin moments before he was shot, and such testimony would have been relevant to Appellant's state of mind when he shot Simmons, who had uttered the same phrase moments before he was killed.

"It is well settled that evidentiary rulings are within the sound discretion of trial courts." *Commonwealth v. Distefano*, 265 A.3d 290, 297 (Pa. 2021). "Accordingly, when a party adverse to a trial court's evidentiary ruling seeks appellate review of that determination, that party carries a heavy burden to demonstrate that the trial court abused its discretion." *Id*. (citing *Commonwealth v. Norton*, 201 A.3d 112, 120 (Pa. 2019)). "An appellant cannot simply meet this burden by simply persuading an appellate court that it may have reached a different conclusion than reached by the trial court; rather, to overcome this heavy burden, the appellant must demonstrate that the trial court actually abused its discretionary power." *Id.*

Here, the trial court did not err in ruling on the admissibility of Appellant's testimony about his cousin's death because the record shows that

he was in fact permitted by the trial court to testify about that event. The jury heard Appellant's testimony that, at the time he shot Simmons, he was thinking about his cousin's murder. The trial court did not bar defense counsel from eliciting Appellant's testimony about what his cousin's murderer had stated, or how Appellant's state of mind was influenced by the fact that Simmons had threatened to "air him out," uttering the same phrase that the murderer of Appellant's cousin had spoken.

Rather, the transcripts of Appellant's trial testimony show that defense counsel asked Appellant whether he was thinking of his cousin's murder during his encounter with Simmons. Appellant responded affirmatively, and defense counsel did not ask further questions about that topic. The record does not show that the trial court directed defense counsel to cease questioning Appellant about his cousin's murder, or specifically, from asking Appellant about how his state of mind was affected by the fact that Simmons had threatened him by using a phrase similar to the one spoken to his deceased cousin. *See* N.T. Trial, 8/3/2023 (a.m.), at 54-55. Thus, there is no merit to Appellant's second claim that his state-of-mind testimony was erroneously excluded.

Appellant's third and final claim is that the trial court abused its discretion in not sending the jury a printed copy of the justification defense

instruction[1] in response to the jury's request for a written description of the charges, as well as a definition of "malice."[2] We find no merit in this claim, as the record shows that the trial court in fact supplied the jury with all the written materials it requested.

Under Pa.R.Crim.P. 646(B), "[t]he trial judge may permit members of the jury to have for use during deliberations written copies of the portion of the judge's charge on the elements of the offenses, lesser included offenses, and any defense upon which the jury has been instructed." Whether written documents should be allowed to go out with the jury during its deliberation is within the trial court's discretion. *See Commonwealth v. Barnett*, 50 A.3d 176, 194 (Pa. Super. 2012) (citing *Commonwealth v. Merbah*, 411 A.2d 244, 247 (Pa. Super. 1979)). The comment to Rule 646 provides that "once

_____

[1] A defendant may prevail on a justification defense to a murder charge where it is shown that the defendant (a) reasonably believed deadly force against the victim was necessary to avoid imminent danger of death or serious bodily injury; (b) that the defendant did not provoke the incident leading to the victim's death; and (c) the defendant did not violate a duty to retreat. *See Commonwealth v. Burns*, 416 A.2d 506, 507 (Pa. 1980).

[2] "Malice" is the state of mind necessary to establish the offense of first and third degree murder. *See e.g., Commonwealth v. Truong*, 36 A.3d 592, 597 (Pa. Super. 2012) (*en banc*) ("Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice."); *see also* 18 Pa.C.S.A. § 2502. Malice consists of either an express intent to kill or inflict great bodily harm, or "hardness of heart, cruelty, recklessness of consequences of a mind regardless of social duty indicating an unjustified disregard for the probability of death or great bodily harm and an extreme indifference to human life." *Commonwealth v. Taylor*, 337 A.2d 545 (Pa. 1975) (internal quotations excluded).

the judge permits the use of the written elements [of the charged offenses], the elements of all the offenses, lesser included offenses, and defenses upon which the jury was charged must be provided to the jury in writing." Pa.R.Crim.P. 646(B), cmt.

In the present case, at the close of the evidence, Appellant requested a charge of voluntary manslaughter (supported by a theory of imperfect self-defense), as a lesser offense of the murder counts. The request was granted, and the jury was read instructions on that lesser offense, as well as a charge regarding imperfect self-defense.

During deliberations, the jury twice requested for the trial court to send it written materials. The first request from the jury was for a written description of each of the charges, as well as the definition of "malice." N.T. Trial, 8/4/2023 (a.m.), at 3. After hearing oral argument from counsel on that issue, the trial court sent back written, comprehensive instructions on the subject of homicide, which included the definition of "malice." *See id.*, at 4. Defense counsel had objected that the jury should also be sent a written instruction on the theory of self-defense, but the trial court rejected counsel's request at that time.

A few hours later, the jury sent a second note to the trial court while it was still deliberating, this time asking about the duty to retreat: "Does that duty need to be safe retreat in that moment? Can we have the three different mental states that the law regards as being bad enough to make a killing

murder regarding the term malice." *See id*., at 7-8. The trial court responded to the note by sending back a written instruction on the use of force/deadly force in self-defense, which contained the instruction on the duty to retreat (the specific instruction which defense counsel had earlier requested). *See id*., at 9, 14.

The jury in this case ultimately received all the written materials it sought during deliberations, including the written instruction on self-defense. Appellant has not identified any evidence in the record, or controlling authorities, which suggest that he was prejudiced by the trial court's delay in providing those requested instructions. It is entirely speculative whether the timing of the trial court's response to the jury's questions somehow affected the verdict.[3] Thus, no relief is due on this claim, and the order on review must stand.

---

[3] The Comment to Rule 646 provides that if written copies of a crime's elements are given to the jury, the court must further supply the jury with written copies of any viable defenses. *See* Pa.R.Crim.P. 646, cmt. To the extent that the trial court did not fully comport with the comment to Rule 646, it would not be availing to Appellant because comments to rules are not controlling authority. *See Commonwealth v. Lockridge*, 810 A.2d 1191, 1196 (Pa. 2002) (rule comments are not part of the rules themselves, and may only be used by courts to construe and apply the rules). Further, Appellant still would have had to show that prejudice would have resulted from such an error. He has not done so.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/31/2025