**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANDRE SHUFORD | : | |
| | : | |
| Appellant | : | No. 1540 EDA 2024 |

Appeal from the Judgment of Sentence Entered January 23, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008396-2022

BEFORE: MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED JUNE 23, 2025**

Appellant, Andre Shuford, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial conviction for two counts of aggravated assault and aggravated assault by vehicle, four counts each of simple assault and recklessly endangering another person ("REAP"), and one count each of accident involving death or personal injury and reckless driving.[1]  We affirm.

The relevant facts and procedural history of this matter are as follows. On September 2, 2022, Appellant had been working as a day-laborer for Major Battle, a general contractor.  Along with another day-laborer named Al, Appellant accompanied Mr. Battle to the Lowe's in Southwest Philadelphia.

---

[1] 18 Pa.C.S.A. § 2701(a)(1), 75 Pa.C.S.A. § 3732.1(a), 18 Pa.C.S.A. § 2701(a)(1), 18 Pa.C.S.A. § 2705, 75 Pa.C.S.A. § 3742(a), and 75 Pa.C.S.A. § 3736(a), respectively.

However, after his pickup truck began to overheat, Mr. Battle drove all three men to a nearby AutoZone at 56th and Vine Street to have it examined. Darrin Bellinger, the mechanic, asked the men to wait a few minutes while he serviced another car. Mr. Battle and Al walked around the corner to another store, leaving Appellant in the truck.

Shortly before noon, Mr. Bellinger observed Appellant exit the back seat, get into the driver's seat of the truck, and start it up. The truck immediately went over the parking curb towards a tree as Mr. Bellinger yelled at Appellant that the truck did not have any brakes. Appellant ignored Mr. Bellinger. Appellant then backed up into the parking spot, but once again drove over the parking curb in the lot, before proceeding onto the sidewalk and down onto the street. In the process, Appellant crashed into a parked vehicle, then backed up and hit the vehicle again.

Mr. Bellinger and other onlookers noticed that Appellant was headed directly for the intersection, where Shaheed Richburg was walking into the crosswalk on a green light with his nieces and nephews. Mr. Richburg saw the truck coming at them and tried to keep walking as fast as he could, but when he looked up, the truck was on them. Mr. Bellinger also yelled at Mr. Richburg to get out of the way, but it was too late. Mr. Richburg "balled up" and tried to brace for impact. (N.T. Trial, 7/25/23, at 39-42). Appellant slammed into Mr. Richburg and five-year-old D.M.; Mr. Richburg managed to push the stroller holding three-year-old E.C. and one-year-old J.S. out of the way. Appellant did not stop after impact to render aid or call for help. Rather, he

- 2 -

fled in the damaged truck.

Onlookers yelled at Mr. Bellinger to follow Appellant and catch him, and he began to drive after the truck. Mr. Bellinger stopped at the intersection because D.M. "looked dead" and he was concerned for her. (*Id.* at 64). Several onlookers who had also stopped to help the family told Mr. Bellinger to chase after Appellant and that they would tend to the children. When Mr. Bellinger found the truck three or four blocks away, on the 5300 block of Race Street, Appellant had already abandoned it. Mr. Bellinger flagged down police officers and told them, "This is the truck that just hit these kids" and that Mr. Battle, the owner of the truck, was not responsible for the accident. (*See id.*)

Meanwhile, Mr. Richburg and D.M. were left lying in the street, severely injured. Mr. Richburg suffered two broken legs, an injury to his left knee, a crushed pelvis, a collapsed lung, a broken rib, a concussion, and scars from the road rash. D.M., who was unresponsive, was later airlifted to the Children's Hospital of Philadelphia ("CHOP"). She suffered a traumatic brain injury, a broken arm, a fractured shoulder, a fractured collarbone, a fractured eye socket, and damage to the nerve of her left eye. E.C. suffered a road rash and laceration to her scalp, and J.S. suffered road rash and a laceration close to his eye.

By the time Mr. Battle returned to the AutoZone, there were police officers on scene. A mechanic approached and informed Mr. Battle that Appellant had stolen his truck and driven off. Mr. Battle explained to police that Appellant had stolen his truck while Mr. Battle and Al went to the store.

Officers recovered security footage from nearby businesses which captured the accident. Video and still photographs taken from the video depicted Appellant driving the car, hitting the victims, and driving away.[2]

In the aftermath of the accident, Mr. Richburg spent three months in the hospital and underwent physical therapy for an extended time. D.M. required inpatient care at CHOP for six months and, at the time of trial, still received outpatient care. During her hospitalization she required a feeding tube and suffered numerous fevers and infections. Following her discharge, D.M.'s left eye is permanently dilated and does not move, she walks with a limp due to her left brain being damaged so severely, and she does not have full use of her right arm and hand.

Approximately a month and a half later, Appellant was arrested. The matter proceeded to a bench trial on July 25, 2023. At the close of testimony and argument, the court held the matter under advisement to review case law regarding the *mens rea* required for aggravated assault graded as a felony of the first degree. On August 2, 2023, the court convicted Appellant of the aforementioned charges. The court acquitted Appellant of two counts of aggravated assault, two counts of aggravated assault by vehicle, and one count each of criminal mischief and accidents involving damage to unattended vehicle or property.

On January 23, 2024, the court sentenced Appellant to six to fifteen

---

[2] The video exhibits were not included in the certified record on appeal.

years' incarceration, followed by two years of probation. On February 1, 2024, Appellant timely filed a post-sentence motion. On May 9, 2024, the court denied Appellant's post-sentence motion. On January 5, 2024, Appellant timely filed a notice of appeal. That same day, the court ordered him to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Following several extensions, Appellant timely complied on September 11, 2024.

On appeal, Appellant raises a single issue for review:

> Was the evidence insufficient to find Appellant guilty of F1 aggravated assault beyond a reasonable doubt because the evidence proved that Appellant acted only recklessly or with gross negligence in causing a traffic accident, and failed to prove that he acted with malice?

(Appellant's Brief at 3).

Appellant argues that the Commonwealth failed to prove that he possessed the *mens rea* required for aggravated assault. Specifically, Appellant contends that the Commonwealth did not prove beyond a reasonable doubt that he acted recklessly under the circumstances manifesting extreme indifference to the value of human life. Appellant admits that driving a malfunctioning truck may have been reckless or grossly negligent, but he insists that his actions did not rise to the heightened level of culpability required to sustain a conviction for aggravated assault. Rather, Appellant suggests that he was not aware that the truck was malfunctioning. Appellant concludes that the Commonwealth presented insufficient evidence to support his aggravated assault convictions, and this Court must grant

relief.[3]  We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.  Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.  Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty.  Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence.  Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

The Crimes Code defines aggravated assault as follows:

_____

[3] Appellant does not challenge any of his other convictions on appeal.

**§ 2702. Aggravated assault**

**(a) Offense defined.**—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. § 2702(a)(1).  The Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  18 Pa.C.S.A. § 2301.

"When a victim actually sustains serious bodily injury, the Commonwealth can, but does not necessarily have to, establish specific intent to cause such harm."  ***Commonwealth v. Burton***, 2 A.3d 598, 602 (Pa.Super. 2010) (*en banc*), *appeal denied*, 613 Pa. 641, 32 A.3d 1275 (2011).  "[T]he statute's intent requirement can be met if the defendant acts recklessly under circumstances manifesting an extreme indifference to human life."  ***Id.***  "[F]or the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that injury or death will ensue."  ***Commonwealth v. Packer***, 641 Pa. 391, 406, 168 A.3d 161, 170 (2017) (quoting ***Commonwealth v. O'Hanlon***, 539 Pa. 478, 482, 653 A.2d 616, 618 (1995)).

In other words, the Commonwealth had to prove that [the defendant] acted with malice.

> To prove malice, it must be shown that the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm. This state of mind may be inferred from conduct, recklessness of consequences, or the cruelty of the crime.

*Commonwealth. v. Payne*, 868 A.2d 1257, 1261 (Pa.Super. 2005), *appeal denied*, 583 Pa. 681, 877 A.2d 461 (2005) (internal citations and quotation marks omitted).

This Court has observed:

> Motor vehicle crashes seldom result in an aggravated assault conviction because of this heightened *mens rea*. However, in some circumstances the malice requirement has been met, and this [C]ourt has not hesitated to uphold an aggravated assault or a third degree murder charge depending on the particular facts of a motor vehicle crash.

*Commonwealth v. Miller*, 955 A.2d 419, 422 (Pa.Super. 2008) (citations omitted). Such cases involve "sustained recklessness by a driver in the face of an obvious risk of harm to his victims." *Commonwealth v. Kling*, 731 A.2d 145, 147 (Pa.Super. 1999) (citing *Commonwealth v. Comer,* 552 Pa. 527, 716 A.2d 593 (1998)). Put another way,

> Malice has been found to exist where an accident caused by a reckless motorist follows pleas from others to stop. *See* [*Commonwealth v. Pigg*, 571 A.2d 438, 441 (Pa.Super. 1990)] (intoxicated tractor-trailer driver crashed after ignoring another driver's request to stop driving); *Commonwealth v. Urbanski,* [627 A.2d 789 (Pa.Super. 1993)] (drunk driver causes collision after ignoring pleas from wife to slow down and stop driving erratically).

*Miller, supra* at 423. *See also Commonwealth v. Taylor*, 461 Pa. 557, 337 A.2d 545 (1975) (holding that intoxicated condition of driver, distance

- 8 -

bodies were propelled upon impact, awareness that this was area where children were likely to traverse, absence of any physical or climatic condition which could explain or contribute to accident, and failure to stop immediately after impact, all contributed to malice).

Instantly, the trial court observed:

> [T]he evidence adduced at trial amply supported [Appellant's] aggravated assault convictions. [Appellant] attempted to leave the AutoZone lot with Mr. Battle's pick-up truck, by driving over a parking curb—only to be stopped and explicitly warned by a mechanic that the truck's braking system was dysfunctional. [Appellant] heeded the warning but only briefly; 30 seconds later he drove over the parking curb a second time, into the street and crashed into a parked vehicle. [Appellant] backed up in an attempt to drive away, but crashed into the parked vehicle a second time. Despite his actual awareness that the truck was unsafe for driving on a public street, [Appellant] decided to continue driving it. By all accounts, including video evidence, [Appellant] sped down the street and crashed head-on into helpless pedestrians, propelling them violently into the air and causing them to suffer serious, permanent injuries. Perhaps if he had simply run a red light and struck pedestrians his actions would comprise mere recklessness. However, [Appellant's] actions, prescient awareness, and deliberate decisions in this case transcended far beyond ordinary recklessness—they manifested an extreme indifference to the value of human life.

(Trial Court Opinion, 10/3/24, at 15-16). The trial court further noted that eyewitness testimony established "both the erratic and unsafe quality of [Appellant's] driving as well as the dysfunction of the truck prior to the accident, yet [Appellant] continued to drive." (*See id.* at 17). Specifically, Mr. Bellinger testified, in pertinent part, as follows:

And as I'm looking I'm like what the hell is he doing?

- 9 -

Because he started the truck up. He wasn't supposed to turn the truck on 'cause it doesn't have any brake lines inside. The brake lines is messed up. So where is he about to start the truck up and go? And the truck come, like, out. It was sitting right here, It's like a little thing that sits on the ground like this [a parking curb]. The truck goes over that [parking curb] and he's about to hit the tree. My car is directly in front of the tree in the street, though. So, I'm like .... let me move my car. You're about to hit my car. Everybody was telling the dude with the car to back up. Where are you going? The car doesn't have brakes, back up. So he does back up into the parking spot. And then probably like, 30 seconds later the car is coming back over [the parking curb] into the street, runs into a car across the street, which would have been my car if I didn't move it. Then after it hits the [other] truck, it's trying to back up to get out of there, it hits the truck again. It backs up. It takes off down the street. As we're watching it take off, the guy with some kids crossing the street, we're trying to yell for him to get out of the street, but by the time he looks up and looks the other way he's flying in the air.

(N.T. Trial, 7/25/23, at 62-63). As a result, the trial court concluded that the evidence established Appellant's *mens rea* to support his aggravated assault convictions. (**See** Trial Court Opinion at 17-18).

The record supports the trial court's analysis. The Commonwealth presented evidence that Appellant stole a truck that had been undergoing brake work. (**See** N.T. Trial, 7/25/23, at 62-63). Mr. Bellinger warned Appellant that the truck had no brakes, and various onlookers yelled at him to stop. (*Id.* at 62-63, 73-80). Appellant had the opportunity to get out of the truck, and he initially backed up into a parking spot instead of continuing to drive. (*Id.* at 62-63). Nevertheless, Appellant continued driving, hitting a parked vehicle twice, and in the process sped into the intersection and severely injured pedestrians. (*Id.* at 62-63, 73-80). Viewed in the light most

favorable to the Commonwealth as verdict-winner, the evidence was sufficient to establish that Appellant acted recklessly under circumstances manifesting an extreme indifference to the value of human life.[4]  **See** 18 Pa.C.S.A. § 2702(a)(1); **Packer, supra**; **Burton, supra**; **Miller, supra**; **Payne, supra**. **See also Sebolka, supra**.  Accordingly, we affirm.

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 6/23/2025

---

[4] Appellant's reliance on **O'Hanlon, supra** is misplaced.  In addition to stating the requirements for recklessness in cases of aggravated assault, **O'Hanlon** stands for the proposition that driving while intoxicated is not recklessness *per se*.  This case does not involve an allegation of driving while intoxicated nor an allegation of recklessness *per se*.